**CITY OF ERIE, Plaintiff,**

v.

**GUARANTY NATIONAL INSURANCE COMPANY, Imperial Casualty and Indemnity Company, and Western World Insurance Company, Defendants.**

**Civil Action No. 95–90 Erie.**

United States District Court,
W.D. Pennsylvania.

Jan. 19, 1996.

Gregory A. Karle, Dailey, Restifo & Dailey, Erie, PA, for City of Erie, Pennsylvania.

Marcia H. Haller, Steven C. Beckman, MacDonald, Illig, Jones & Britton, Erie, PA, for Guaranty National Insurance Company.

Mary K. Conturo, Kutak Rock, Pittsburgh, PA, Robert M. Slovek, Kutak Rock, Omaha, NE, for Imperial Casualty and Indemnity Company.

Nora Barry Fischer, Pamela G. Cochenour, Pietragallo, Bosick & Gordon, Pittsburgh, PA, for Western World Insurance Company.

### MEMORANDUM

McLAUGHLIN, District Judge.

This Court's jurisdiction over this action is by reason of diversity of citizenship under 28 U.S.C. § 1332. The Plaintiff is the City of Erie, Pennsylvania (the "City," "Erie"). The Defendants are several companies that provided insurance coverage to Erie between 1980 and 1995. Guaranty National Insurance Company and Western World Insurance Company have moved to dismiss this action pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons that follow, these motions will be granted.

## I. BACKGROUND

Each of the Defendants has entered into one or more contracts with the City to tender a defense to certain categories of civil actions and to indemnify the City for its losses as a result of claims within those categories. The City and several of its employees are currently defendants in *DiNicola v. DiPaolo*, Civil Action 94–323 Erie (W.D.Pa.), which is pending before this Court. The City alleges that each of the insurance companies has breached its contract by refusing to tender a defense or agree to indemnify it in connection with this action.

A. *The Insurance Policies*

With its Complaint, Erie filed copies of the General Municipal Liability, Law Enforcement Professional Liability, and General Liability policies under which it was insured from July 1, 1980 to January 1, 1995. Only the policies issued by Guaranty National and Western World are relevant to these motions.

1. The Guaranty National policies

Guaranty National issued four "Municipal Liability" policies to Erie. These policies were in effect from July 1, 1980 to January 1, 1984. *See* Exs. A–D to Complaint. Each policy stated in the first paragraph of its Municipal Liability Coverage Form: [1]

> The Company will pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay by reason of liability imposed by law, or liability assumed under contract, insofar as the Named Insured may legally do so, for damages because of:
>
> A.  Personal Injury Liability
>
> B.  Property Damage Liability, or
>
> C.  Errors and Omissions Liability
>
> to which this insurance applies, caused by an occurrence within the policy period....

Each policy defined "Personal Injury" to include malicious prosecution. "Occurrence" was defined in the earlier policies as "an accident including continuous or repeated exposure to conditions, which results in personal injury ... neither expected nor intended from the standpoint of the Insured," *see* Exs. A–B, and in the later policies as "an accident or event, including continuous or repeated exposure to conditions, which results during the policy term in personal injury ... neither expected nor intended from the standpoint of the Insured," *see* Exs. C–D.

2. The Western World policies

Western World issued six "Law Enforcement Officers Liability" policies to the Erie Police Department. These policies were in effect from November 1, 1988 to January 1,

1995. *See* Exs. I–O to Complaint. The "Insuring Agreement" in the policies in effect after November 1, 1992 stated, "We will pay those sums that the insured becomes legally obligated to pay as damages because of ... 'personal injury' to which this insurance applies occurring during the policy period as a result of a 'law enforcement incident' that takes place in the coverage territory." Exs. M–O. The earlier Western World policies also provided "Personal Injury" coverage and stated, "This policy applies only to acts committed or alleged to have been committed within the legal jurisdiction of the named insured during the policy period stated in the declarations, including mutual law enforcement agreements between political subdivisions." Exs. I–L. Both sets of Western World policies defined "personal injury" to include malicious prosecution. None of the Western World policies defined "occurrence."

B. *The Underlying Action—DiNicola v. DiPaolo*

On November 23, 1994, Louis P. DiNicola filed a civil complaint in this Court. He named as defendants the City, the Erie Police Department, two former members of the Erie Police Department, and two other individuals.

DiNicola's action arose out of his having been charged with three counts of second-degree murder and his eventual acquittal on these charges. These charges were related to a house fire in Erie on August 30–31, 1979 in which three people died. The two individual police defendants investigated the fire and, on March 25, 1980, executed an affidavit in support of a criminal complaint against DiNicola. DiNicola was convicted on October 20, 1980. His conviction was overturned by the Pennsylvania Supreme Court on December 6, 1983. DiNicola was retried in May 1994 and acquitted of all charges against him.

In his civil complaint, DiNicola alleged that the affidavit and criminal complaint against him were false and not adequately supported. He alleged that the police concealed witness statements favorable to him, destroyed other

---

**1.** The two later policies include minor changes in this language. These changes are of no relevance here.

material evidence, improperly used hypnosis to obtain testimony against him, employed a jailhouse informant, and knowingly used perjured testimony from that informant. DiNicola alleged that the City and the Erie Police Department were deliberately indifferent in their failure to train, discipline, and supervise their agents.

DiNicola identified two causes of action. First, he claimed that the defendants' actions and omissions had deprived him of rights under the Fourth, Fifth, and Fourteenth Amendments of the U.S. Constitution. Second, he asserted rights of action under Pennsylvania law for "false arrest and imprisonment, malicious prosecution, spoliation of evidence, intentional infliction of emotional distress, defamation, abuse of process, willful misconduct, prima facie tort, conspiracy tort, negligence, and gross negligence." He prayed for compensatory and punitive damages and attorney's fees.

## II.  *STANDARD OF REVIEW*

■■■ On a motion to dismiss under Rule 12(b)(6), this Court accepts as true all factual allegations in the complaint. *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit,* 507 U.S. 163, 163–64, 113 S.Ct. 1160, 1161, 122 L.Ed.2d 517 (1993). The proper inquiry is "whether relief could be granted . . . 'under any set of facts that could be proved consistent with the allegations.'" *Gasoline Sales, Inc. v. Aero Oil Co.,* 39 F.3d 70, 71 (3d Cir.1994) (quoting *National Organization for Women, Inc. v. Scheidler,* 510 U.S. 249, ——, 114 S.Ct. 798, 803, 127 L.Ed.2d 99 (1994)). If no cause of action can be identified, dismissal is proper.

## III.  *DISCUSSION*

Guaranty National and Western World (collectively, "Defendants") argue that the policies that they issued to the City are "occurrence" policies, in which they agreed to insure the City and the Erie Police Department against liability arising from conduct occurring during the policy period. They submit that any duty to defend arises only from DiNicola's malicious prosecution claim and that, for these purposes, this claim is alleged to have "occurred" with the March 25, 1980 execution of the criminal complaint. Because that date was prior to the period of coverage provided by any policy issued to the City by either company, Defendants assert, the City has no cause of action against them.

■■■ An insurer's duty to defend is broader than its duty to indemnify:

> In analyzing whether the insurer has a duty to defend, we must first look to the complaint filed against the insured. "It is not the actual details of the injury, but the nature of the claim which determines whether the insurer is required to defend." *Springfield Tp. et al. v. Indemnity Ins. Co. of North America,* 361 Pa. 461, 64 A.2d 761 (1949). After discerning the facts alleged in the complaint, we then must decide whether, if those facts were found to be true, the policy would provide coverage. If it would, then there is a duty to defend.

*D'Auria v. Zurich Insurance Co.,* 352 Pa.Super. 231, 507 A.2d 857, 859 (1986) (citations omitted); *Antrim Mining, Inc. v. Pennsylvania Insurance Guaranty Ass'n,* 436 Pa.Super. 522, 648 A.2d 532, 534–35 (1994), *alloc. denied,* 540 Pa. 616, 657 A.2d 487 (1995). This duty continues until the insurer can "confine the claim to a recovery that the policy [does] not cover." *Lee v. Aetna Casualty & Surety Co.,* 178 F.2d 750, 752 (2d Cir.1949) (quoted in *D'Auria,* 507 A.2d at 859).

■■■ Defendants are correct that these policies are occurrence policies. "An 'occurrence' policy protects the policy holder from liability for any act done while the policy is in effect, whereas a 'claims made' policy protects the holder only against claims made during the life of the policy." *St. Paul Fire & Marine Insurance Co. v. Barry,* 438 U.S. 531, 535 n. 3, 98 S.Ct. 2923, 2927 n. 3, 57 L.Ed.2d 932 (1978).

The City alleges that the language of the policies is ambiguous on this point and cites the rule that ambiguities in an insurance policy are to be construed against the insurer. *See United Services Automobile Ass'n v. Elitzky,* 358 Pa.Super. 362, 517 A.2d 982, 986 (1986), *alloc. denied,* 515 Pa. 600, 528 A.2d 957 (1987). The City submits that the policies are ambiguous because they do not ex-

pressly speak to coverage for personal injury "occurring within the policy year." Thus, the City concludes, Defendants' policies insure it regardless of when the act giving rise to liability occurred.

This Court holds, however, that these policies are not ambiguous on this issue. "[A] term is ambiguous only 'if reasonably intelligent men on considering it in the context of the entire policy would honestly differ as to its meaning.'" *Id.* (quoting *Erie Insurance Exchange v. Transamerica Insurance Co.,* 352 Pa.Super. 78, 507 A.2d 389, 392 (1986)[2]). Each of the policies stated that it provided coverage for liability from incidents occurring "during the policy period." There is no real distinction between this phrasing and "within the policy year." All of the policies involved here were occurrence policies.

■ All parties agree that the only claim raised by DiNicola that might give rise to a duty to defend is the allegation of malicious prosecution. However, the parties disagree as to when, for the purpose of determining insurance coverage, malicious prosecution "occurs." Defendants argue that the tort occurs when the criminal defendant/malicious prosecution plaintiff is first charged with the criminal offense. The City suggests two alternatives: first, that the tort occurs when the criminal action is concluded; or, second, that the tort occurs at charging, termination of the criminal action, and all points in between.

The Pennsylvania Supreme Court has not addressed this issue. Therefore, this Court must predict how that court would hold. *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *Adams v. Madison Realty & Development, Inc.,* 853 F.2d 163, 168 (3d Cir.1988); 19 Charles Alan Wright Arthur R. Miller, Edward H. Cooper, *Federal Practice and Procedure* § 4507, at 89 (1982). In so doing, this Court should consider all relevant sources of pertinent state law. *Jones & Laughlin Steel Corp. v.*

*Johns–Manville Sales Corp.,* 626 F.2d 280, 285 (3d Cir.1980).

The Pennsylvania Supreme Court would first hold that "the determination of when an occurrence happens must be made by reference to the time when the injurious effects of the occurrence took place." *See Appalachian Insurance Co. v. Liberty Mutual Insurance Co.,* 676 F.2d 56, 61–62 (3d Cir.1982). *See also D'Auria,* 507 A.2d at 861–62 (following *Appalachian Insurance);* [3] *Keystone Automated Equipment Co., Inc. v. Reliance Insurance Co.,* 369 Pa.Super. 472, 535 A.2d 648, 652 (following *D'Auria* and holding that place of occurrence is place where damage occurred rather than site of acts causing damage), *alloc. denied,* 519 Pa. 654, 546 A.2d 59 (1988).

The court would then hold that the injury manifests itself at the time that charges are filed. The court has recognized that the policy underlying the cause of action for malicious prosecution is the protection of individuals against false accusation. *See Kelley v. General Teamsters, Chauffeurs, and Helpers, Local Union 249,* 518 Pa. 517, 544 A.2d 940, 942 (1988). "[T]he hardships, humiliation, suspense, and expense to which an innocent person is subjected in an improper prosecution cannot be compensated for by a mere acquittal." *Neczypor v. Jacobs,* 403 Pa. 303, 169 A.2d 528, 531 (1961). These injuries clearly commence when the criminal charge is filed. A reasonable person in the position of the criminal defendant would presumably be aware of these injuries, as he or she knows of the charges and of his or her innocence. Therefore, following a "time of the injury" rule, the court would hold that the tort "occurs"—for the purpose of determining whether an occurrence policy provides coverage—at the time that charges are filed.

This rule is consistent with *Appalachian Insurance.* Appalachian had insured Liberty Mutual from August 1, 1971 to August 1,

---

**2.** *Rev'd on other grounds,* 516 Pa. 574, 533 A.2d 1363 (1987).

**3.** "[A]n intermediate appellate state court ... is a datum for ascertaining state law which is not to be disregarded by a federal court *unless it is convinced by other persuasive data that the high-*

*est court of the state would decide* otherwise." *Jones & Laughlin Steel,* 626 F.2d at 285 n. 10 (quoting *Commissioner v. Estate of Bosch,* 387 U.S. 456, 465, 87 S.Ct. 1776, 1782, 18 L.Ed.2d 886 (1967)).

1974 under an occurrence-based umbrella policy. 676 F.2d at 59. On February 28, 1972, female employees of Liberty Mutual filed a class-action lawsuit. The suit alleged that Liberty Mutual had discriminated against them on the basis of gender in certain employment practices adopted in 1965. The lawsuit was settled in 1978. *Id.* at 58. Liberty Mutual then demanded indemnification, and Appalachian sought a declaratory judgment that it was under no duty to indemnify. The district court granted Appalachian's motion for summary judgment, and the Third Circuit affirmed. It reasoned that the injurious effects of Liberty Mutual's discriminatory practices began immediately upon their adoption, well before the effective date of the Appalachian policy.[4] Thus, Appalachian had no duty to indemnify Liberty Mutual. *Id.* at 62–63.[5]

The discrimination claim underlying *Appalachian Insurance* is similar in important respects to a claim for malicious prosecution. Like the women suing Liberty Mutual, a malicious prosecution plaintiff alleges that the tort against him or her began on a particular date. Neither type of plaintiff alleges that he or she suffered all of his or her harm on that date; both allege that the harm accrued from that date forward. In addition, the injury from malicious prosecution follows even more necessarily from charging than the injury alleged by Liberty Mutual's employees followed from its adoption of the discriminatory policies. Some of the Liberty Mutual employee class members were not affected by the discriminatory practices—or even employed by Liberty Mutual—at the time that the practices were adopted. *Id.* at 58. A malicious prosecution plaintiff, by contrast, is almost invariably aware of the charges against him at the time that they are filed or almost immediately thereafter.

A clear majority of courts in other jurisdictions that have considered this issue have held that the tort occurs when charges are filed. *See, e.g., Royal Indemnity Co. v. Werner,* 979 F.2d 1299 (8th Cir.1992); *Ethicon, Inc. v. Aetna Casualty and Surety Co.,* 688 F.Supp. 119, 127 (S.D.N.Y.1988); *Southern Maryland Agricultural Ass'n v. Bituminous Casualty Corp.,* 539 F.Supp. 1295 (D.Md. 1982); *Zurich Insurance Co. v. Peterson,* 188 Cal.App.3d 438, 232 Cal.Rptr. 807 (1987); *Harbor Insurance Co. v. Central National Insurance Co.,* 165 Cal.App.3d 1029, 211 Cal. Rptr. 902 (1985); *S. Freedman & Sons v. Hartford Insurance Co.,* 396 A.2d 195 (D.C. 1978); *American Family Mutual Insurance Co. v. McMullin,* 869 S.W.2d 862 (Mo.Ct. App.1994); *Paterson Tallow Co. v. Royal Globe Insurance Cos.,* 89 N.J. 24, 444 A.2d 579 (1982); *Muller Fuel Oil Co. v. Insurance Co. of North America,* 95 N.J.Super. 564, 232 A.2d 168 (1967). *But see Roess v. St. Paul Fire and Marine Insurance Co.,* 383 F.Supp. 1231 (M.D.Fla.1974) (coverage determined by date on which criminal proceedings terminate); *Security Mutual Casualty Co. v. Harbor Insurance Co.,* 65 Ill.App.3d 198, 21 Ill. Dec. 707, 382 N.E.2d 1 (1978) (same), *rev'd,* 77 Ill.2d 446, 34 Ill.Dec. 167, 397 N.E.2d 839 (1979).

The City proposes two alternatives. First, it suggests that coverage should be determined by reference to the date on which the criminal proceedings are terminated. It points out that no action for malicious prosecution may lie until the criminal proceedings have terminated in the criminal defendant's favor. *See Haefner v. Burkey,* 534 Pa. 62, 626 A.2d 519, 521 (1993). However, the earlier trigger makes more sense. As *Kelley* and *Neczypor* make clear, the injury to be guarded against is improper maintenance of a criminal action, not its termination. A municipality such as Erie seeks to insure itself against liability resulting from the allegedly unlawful acts of its law enforcement personnel. It is not seeking insurance against the inability, for whatever reason, of the state's

---

**4.** The Honorable Gerald J. Weber, late of this Court, subsequently held in a closely related case that the injury actually occurred for purposes of insurance coverage on May 2, 1965, the effective date of Title VII of the Civil Rights Act of 1964. Prior to that date, he noted, the class members' injuries were not cognizable. *Liberty Mutual In-*

*surance Co. v. Those Certain Underwriters at Lloyds,* 650 F.Supp. 1553, 1558 (W.D.Pa.1987).

**5.** The court also noted, "A contrary result in this case would contravene the rule that an insured cannot insure against something which has already begun." *Liberty Mutual,* 676 F.2d at 63.

prosecutors to bring a criminal action to a successful conclusion.

The City also proposes the use of a "triple trigger." Under such a system, the duties to defend and, if necessary, to indemnify would run to all of the insurance companies that provided coverage to the municipality between the date on which the criminal action was commenced and the date on which it was terminated. *See ACandS, Inc. v. Aetna Casualty and Surety Co.,* 764 F.2d 968, 973 (3d Cir.1985); *Colt Industries, Inc. v. Aetna Casualty and Surety Co.,* Civ.Action No. 87–4107, 1989 WL 147615, at *4–5 (E.D.Pa. Dec. 6, 1989), *on reconsideration,* 1991 WL 97702 (May 30, 1991); *J.H. France Refractories Co. v. Allstate Insurance Co.,* 534 Pa. 29, 626 A.2d 502, 506 (1993). However, this theory suffers from the same infirmities as the City's other suggestion. Moreover, the Pennsylvania Supreme Court has adopted the theory only for progressive conditions such as silicosis and asbestosis and, in doing so, has noted, "The insurance policy language and the evidence of the etiology and pathogenesis of asbestos-related disease compel us to reach this result." *J.H. France Refractories,* 626 A.2d at 506. Although malicious prosecution necessarily continues over some period of time, the time at which the harm to the plaintiff begins can be fixed at the filing of the criminal charges. There is no problem akin to determining the point at which a person's regular exposure to asbestos fibers produce a related ailment. *See Ethicon,* 688 F.Supp. at 127. Use of the triple trigger would not be appropriate in this case.

■ The proper standard, then, is to look to the date on which criminal charges were filed. Application of this rule to these motions is straightforward. Defendants have no duty to defend the *DiNicola* action, and these policies cannot give rise to a duty to indemnify Erie. DiNicola was charged on March 28, 1980. That day is the date on which the tort of malicious prosecution is alleged to have occurred for the purposes of insurance coverage. Guaranty National did not provide any coverage to the City prior to September 1, 1980. Western World did not provide any coverage to the City prior to

November 1, 1988. Therefore, the motions will be granted.

## IV. CONCLUSION

An appropriate order will follow.

### ORDER

AND NOW, this 19 day of January, 1996, for the reasons stated in the accompanying Memorandum, IT IS HEREBY ORDERED

1) that the Motion to Dismiss of Defendant Western World Insurance Company [Doc. 9] is GRANTED;

2) that the Motion to Dismiss of Defendant Guaranty National Insurance Company [Doc. 14] is GRANTED; and

3) that this action is dismissed as to Defendants Guaranty National Insurance Company and Western World Insurance Company.