CONSULTING ENGINEERS, INC. and
Paul K. Goldberg, Appellants,

v.

INSURANCE COMPANY OF NORTH
AMERICA, Selective Way Insurance
Company and Lucjan Zlotnicki and An-
drei Neuman, Appellees.

Superior Court of Pennsylvania.

Argued Oct. 9, 1997.

Filed March 31, 1998.

Reargument Denied June 9, 1998.

Stephen J. Springer, Philadelphia, for ap-
pellant.

Andrew J. Braunfeld, Norristown, for In-
surance Company of North America, appel-
lee.

Andrew J. Gallogly, Philadelphia, for Se-
lective Way Insurance Company, appellee.

Before CAVANAUGH, DEL SOLE and
HOFFMAN, JJ.

CAVANAUGH, Judge:

Consulting Engineers, Inc. and Paul K.
Goldberg ("appellants") initiated the present
action pursuant to the Declaratory Judgment
Act, 42 Pa.C.S.A. § 7531 *et seq.*, seeking a
judicial declaration that the Insurance Com-
pany of North America ("INA") and/or Selec-
tive Way Insurance Company ("Selective")
were required to provide appellants with a
defense and indemnification in an underlying
lawsuit for Wrongful Use of Civil Proceed-
ings.[1] The trial court rejected this claim for

---

1. *See* 42 Pa.C.S.A. § 8351 *et seq.*

defense and indemnification and entered an order that denied appellants' motion for partial judgment on the pleadings and granted judgment on the pleadings in favor of INA and Selective. In a case of first impression in this Commonwealth, we must determine whether INA and Selective, under the applicable insurance policies, are required to defend and indemnify appellants for damages flowing from the tort of Wrongful Use of Civil Proceedings, where the alleged wrongful suit was commenced by appellants before the INA and Selective coverage periods began but continued after the policies were in effect. After careful review and for the reasons that follow, we affirm.[2]

## FACTS

On May 12, 1989, appellants commenced a lawsuit against Lucjan Zlotnicki and Andrei Neuman in the Court of Common Pleas of Montgomery County.[3] Summary judgment was granted against appellants in that action in April 1993. This Court affirmed the grant of summary judgment and the case was finally terminated in Zlotnicki's and Neuman's favor when the Supreme Court denied allocatur in July 1994. Thereafter, Zlotnicki and Neuman filed the underlying lawsuit against appellants, alleging they maliciously initiated, prosecuted and continued the prior lawsuit without probable cause, for a purpose other than securing proper discovery, joinder and adjudication of claims and to harass and cause harm. This suit is currently pending in the Court of Common Pleas of Philadelphia County.

The action for declaratory judgment was occasioned by INA's and Selective's refusal to defend and indemnify appellants in conjunction with the underlying lawsuit filed by Zlotnicki and Neuman. INA had previously issued a commercial general liability policy to appellants for the period from December 19, 1990 to December 19, 1992, covering personal injury caused or committed during the policy period. Selective issued a business owner's policy to appellants for the period from January 21, 1996, covering personal injury occurring during the policy period. INA and Selective refused to indemnify and defend appellants because the allegedly wrongful suit filed by appellants, upon which the underlying lawsuit is premised, was commenced on May 12, 1989, which was outside the applicable policy periods of the policies issued by each company.

The trial court, in granting judgment on the pleadings in favor of INA and Selective, concluded "that the triggering 'event', in an instance of wrongful use of civil proceedings, which determines whether the carrier must provide coverage under an 'occurrence' policy is when the allegedly wrongful civil suit is commenced." Because the allegedly wrongful suit was instituted before either the INA or Selective policies took effect, the court ruled that neither insurer was required to defend and indemnify appellants and granted judgment on the pleadings. This appeal followed.

## STANDARD OF REVIEW

A motion for judgment on the pleadings should be granted only where the pleadings demonstrate that no genuine issue of fact exists, and the moving party is entitled to judgment as a matter of law. Pa.

**2.** An order which declares the obligations of an insurer to its insured with regards to an underlying lawsuit is expressly defined as a final order and is appealable as of right. *See* 42 Pa.C.S.A. § 7532 (declaration entered under Declaratory Judgment Act has the force and effect of a final judgment or decree); Pa.R.A.P. 341(b)(2) (final order is any order that is expressly defined as a final order by statute); *General Accident Insurance Company of America v. Allen*, 547 Pa. 693, 692 A.2d 1089 (1997) (court's order in declaratory judgment action final and immediately appealable as it was a final determination as to the legal rights and obligations of the parties under insurance policies; court's order also final and immediately appealable on separate ground that

it resolved all claims in declaratory judgment action).

**3.** Zlotnicki and Neuman were named as defendants in the declaratory judgment action and are listed as appellees in this appeal. *See Vale Chemical Co. v. Hartford Accident and Indemnity Co.*, 512 Pa. 290, 516 A.2d 684 (1986) (plaintiff in underlying lawsuit has interest and must be joined as party in declaratory judgment action filed by defendant against its insurers to determine coverage and duty to defend and indemnify). Although listed as appellees, Zlotnicki and Neuman elected to join in and adopt the brief filed by appellants.

R.C.P. 1034; *Giddings v. Tartler,* 130 Pa. Cmwlth. 175, 177, 567 A.2d 766, 767 (1989). Thus, "[i]n reviewing a trial court's decision to grant judgment on the pleadings, the scope of review of the appellate court is plenary; the reviewing court must determine if the action of the trial court is based on a clear error of law or whether there were facts disclosed by the pleadings which should properly go to the jury." *Vogel v. Berkley,* 354 Pa.Super. 291, 296, 511 A.2d 878, 880 (1986), *quoted in Keystone Automated Equip. v. Reliance,* 369 Pa.Super. 472, 475 [535 A.2d 648] (1988), *alloc. den.* 519 Pa. 654, 546 A.2d 59. An appellate court must accept as true all well-pleaded facts of the party against whom the motion is made, while considering against him only those facts which he specifically admits. *Jones v. Travelers Ins. Co.,* 356 Pa.Super. 213, 217, 514 A.2d 576, 578 (1986); *West Penn Administration, Inc. v. Pittsburgh National Bank,* 289 Pa.Super. 460, 467, 433 A.2d 896, 900 (1981). Neither party can be deemed to have admitted either conclusions of law or unjustified inferences. *Sinn v. Burd,* 486 Pa. 146, 149, 404 A.2d 672, 674 (1979); *Jones, supra,* 356 Pa.Super. at 217, 514 A.2d at 578. Moreover, in conducting its inquiry, the court should confine itself to the pleadings themselves and any documents or exhibits properly attached to them. *Jones, supra,* at 217, 514 A.2d at 578; *Gallo v. J.C. Penney Casualty Ins. Co.,* 328 Pa.Super. 267, 270, 476 A.2d 1322, 1324 (1984). It may not consider inadmissible evidence in determining a motion for judgment on the pleadings. 6 *Pennsylvania Standard Practice 2d* § 31:19 at 172. Only where the moving party's case is clear and free from doubt such that a trial would prove fruitless will an appellate court affirm a motion for judgment on the pleadings. *Jones, supra,* 356 Pa.Super. at 217, 514 A.2d at 578; *Gallo, supra,* 328 Pa.Super. at 270, 476 A.2d at 1324.

*Kelly v. Nationwide Ins. Co.,* 414 Pa.Super. 6, 10, 606 A.2d 470, 471–72 (1992).

## DISCUSSION

The Declaratory Judgments Act may be invoked to interpret the obligations of the parties under an insurance contract, including the question of whether an insurer has a duty to defend and/or a duty to indemnify a party making a claim under the policy. *Liberty Mutual Insurance Company v. S.G.S. Company,* 456 Pa. 94, 318 A.2d 906 (1974); *Redevelopment Authority of Cambria County v. International Insurance Company,* 454 Pa.Super. 374, 685 A.2d 581 (1996). A court's first step in a declaratory judgment action concerning insurance coverage is to determine the scope of the policy's coverage. *Lucker Manufacturing v. Home Insurance Company,* 23 F.3d 808 (3d Cir.1994); *see also Erie Insurance Exchange v. Transamerica Insurance Company,* 516 Pa. 574, 533 A.2d 1363 (1987). After determining the scope of coverage, the court must examine the complaint in the underlying action to ascertain if it triggers coverage. If the complaint against the insured avers facts that would support a recovery covered by the policy, then coverage is triggered and the insurer has a duty to defend until such time that the claim is confined to a recovery that the policy does not cover. The duty to defend also carries with it a conditional obligation to indemnify in the event the insured is held liable for a claim covered by the policy. *Pacific Indemnity Company v. Linn,* 766 F.2d 754 (3d Cir. 1985). Although the duty to defend is separate from and broader than the duty to indemnify, both duties flow from a determination that the complaint triggers coverage.

*General Accident, supra* at 706, 692 A.2d at 1095.

Appellants present three arguments: (1) that the INA and Selective policies are not "occurrence" policies; (2) that the tort of Wrongful Use of Civil Proceedings is a continuing injury and, therefore, insurance coverage is triggered under a policy of insurance which was in effect at any time from initiation of the allegedly wrongful lawsuit until its termination; and (3) there are disputed issues of fact which preclude the entry of judgment on the pleadings in favor of INA and Selective.

■ We begin with the insurance policies at issue. "An 'occurrence' policy protects the policy holder from liability for any act done while the policy is in effect, whereas a 'claims made' policy protects the holder only against claims made during the life of the policy." *St. Paul Fire and Marine Insurance Co. v. Barry,* 438 U.S. 531, 535 n. 3, 98 S.Ct. 2923, 2927 n. 3, 57 L.Ed.2d 932, 937 n. 3 (1978). The trial court concluded that both the INA and Selective policies were written on an "occurrence" basis. After careful examination of the policies, we agree.

■ The INA policy provides:

1. Insuring Agreement

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal injury" or "advertising injury" to which this insurance applies.

b. This insurance applies to "personal injury" only if caused by an offense:

(1) Committed in the "coverage territory" during the policy period; and

(2) Arising out of the conduct of your business.

\*    \*    \*    \*    \*    \*

"Personal Injury" means injury, other than "bodily injury," arising out of one or more of the following offenses:

b. Malicious Prosecution.

(quotes in original).

■ The Selective policy provides:

*We* will pay for the benefit of *insureds* all sums which they become legally obligated to pay as damages because of *bodily injury, property damage, or personal injury* caused by an *occurrence* covered by this insurance.

\*    \*    \*    \*    \*    \*

*Personal Injury* means injury which arises out of any of the following offenses com-

mitted in the conduct of *your* business which occurs during the policy period.

● False arrest, detention or imprisonment, or malicious prosecution.

(emphasis in original).[4]

Appellants contend that both policies are ambiguous because neither defines when a covered injury is "committed" or "occurs" for the purpose of triggering coverage. When construing an insurance contract, it must be read in its entirety and the intent gathered from a consideration of the ordinary meaning of the words used in the instrument. *Erie Insurance Exchange v. Transamerica Insurance Co.,* 352 Pa.Super. 78, 507 A.2d 389, 392 (1986), *rev'd on other grounds,* 516 Pa. 574, 533 A.2d 1363 (1987). Ambiguous terms should be construed against the insurer, but a court should not "torture" the language to create an ambiguity where none exists. *Id.* Only where reasonably intelligent men, considering the word in the context of the entire policy, would honestly differ as to its meaning, will an ambiguity be found. *Id.*

Here, the INA policy provides coverage for "personal injury· caused by an offense [c]ommitted ... during the policy period." Similarly, the Selective policy provides coverage for *"personal injury* caused by an *occurrence* covered by this insurance" ... "which occurs during the policy period." In view of this unambiguous language and the applicable policy provisions, considered in their entirety, we conclude that both the INA and Selective policies are "occurrence" policies. No ambiguity exists in the policy language and it is clear that only acts done while the policies were in effect were covered. Each policy specifically focuses on the act causing injury as the coverage "trigger" and specifically requires this injury to occur during the applicable policy period. Finally, the language of neither policy would allow, as a reasonable interpretation, that the policy extended coverage as to claims made during the life of the policy.[5]

---

4. The common law tort of malicious prosecution has been codified as a statutory cause of action—Wrongful Use of Civil Proceedings, 42 Pa.C.S.A. §§ 8351–54. *Matter of Larsen,* 532 Pa. 326, 616 A.2d 529 (1992). Thus, both the INA and Selective policies cover personal injury arising out of the offense of Wrongful Use of Civil Proceedings.

5. Appellants have not argued the INA and Selective policies were "claims made" policies. They have only argued that they are not "occurrence" policies. Indeed, if the policies were "claims made" policies, INA would not be required to provide a defense and indemnification because the claim in this case was filed in or around

Appellants next contend that the tort of Wrongful Use of Civil Proceedings is a continuing injury and, therefore, insurance coverage is triggered under a policy of insurance which was in effect at any time from initiation of the allegedly wrongful lawsuit until its termination. While appellants refer to this approach as a "triple trigger," it is commonly known as a "multiple trigger" theory.

The tort of Wrongful Use of Civil Proceedings is defined as follows:

(a) **Elements of action.**—A person who takes part in the procurement, initiation or continuation of civil proceedings against another is subject to liability to the other for wrongful use of civil proceedings: .

(1) He acts in a grossly negligent manner or without probable cause and primarily for a purpose other than that of securing the proper discovery, joinder of the parties or adjudication of the claim in which the proceedings are based; and

(2) The proceedings have terminated in favor of the person against whom they are brought.

42 Pa.C.S.A. § 8351(a). Our Supreme Court has held that a cause of action for Wrongful Use of Civil Proceedings does not accrue until the allegedly wrongful suit against the plaintiff is terminated in his favor. *Ludmer v. Nernberg,* 520 Pa. 218, 222, 553 A.2d 924, 926 (1989). At that time the applicable two year statute of limitations begins to run. 42 Pa.C.S.A. § 5524(1). The date on which the tort occurs for insurance coverage purposes need not necessarily correspond with the beginning of the statute of limitations because the respective dates serve distinct functions and reflect different policy concerns. The former reflects an effort to· protect the rea-

sonable expectations of the parties to the insurance contract while the latter serves to expedite litigation and discourage stale claims. Because the allegedly wrongful suit may be initiated years before it is actually terminated, we are faced with the question of when precisely does "personal injury" occur for purposes of insurance coverage in a suit for Wrongful Use of Civil Proceedings.

Although Pennsylvania's appellate courts have not addressed this question, other courts have decided the issue. While there is no agreement as to when the tort of malicious prosecution occurs for insurance purposes, a majority of jurisdictions have ruled that the injury occurs, and insurance coverage is triggered, when the allegedly wrongful suit is filed. *See Royal Indemnity Co. v. Werner,* 979 F.2d 1299 (8th Cir.1992) (applying Missouri law); *Southern Maryland Agricultural Assn. v. Bituminous Casualty Corp.,* 539 F.Supp. 1295 (D.Md.1982); *American Family Mutual Insurance Co. v. McMullin,* 869 S.W.2d 862 (Mo.Ct.App.1994); *Ethicon, Inc. v. Aetna Casualty and Surety Co.,* 688 F.Supp. 119 (S.D.N.Y.1988); *Zurich Insurance Co. v. Peterson,* 188 Cal.App.3d 438, 232 Cal.Rptr. 807 (1986); *Harbor Insurance Co. v. Central National Insurance Co.,* 165 Cal.App.3d 1029, 211 Cal.Rptr. 902 (1985); *Paterson Tallow Co., Inc. v. Royal Globe Insurance Cos.,* 89 N.J. 24, 444 A.2d 579 (1982); *S. Freedman & Sons, Inc. v. Hartford Fire Insurance Co.,* 396 A.2d 195 (D.C.1978); *Muller Fuel Oil Co. v. Insurance Co. of North America,* 95 N.J.Super. 564, 232 A.2d 168 (App.Div.1967). Two courts have held, however, that the injury occurs, and insurance coverage is triggered, only when the. plaintiff receives a favorable termination of the allegedly wrongful proceeding and his claim for malicious prosecution arises. *See Roess v. St. Paul Fire and Marine Insur-*

March 1995 and the INA policy period was from December 19, 1990 to December 19, 1992. However, Selective may have been required to provide a defense and indemnification as the Selective policy period was from January 21, 1993 to January 21, 1996. As we have already concluded that the policies were "occurrence" policies, any such inquiry is academic. As will be discussed *infra,* the tort of Wrongful Use of Civil Proceedings presents unique problems regarding precisely when the tort giving rise to the

cause of action occurred. Appellants, while avoiding any label (whether "occurrence" or "claims made") for the policies at issue, seem to be arguing that the policies are written such that they would provide coverage at any time from the commencement of the allegedly wrongful suit until its termination, regardless of the applicable policy periods. Based upon our review of the INA and Selective policies and the pertinent policy language quoted *supra,* we specifically reject such an interpretation.

ance Co., 383 F.Supp. 1231 (M.D.Fla.1974); *Security Mutual Casualty Co. v. Harbor Insurance Co.,* 65 Ill.App.3d 198, 21 Ill.Dec. 707, 382 N.E.2d 1 (1978), *rev'd on other grounds,* 77 Ill.2d 446, 34 Ill.Dec. 167, 397 N.E.2d 839 (1979).

In addition to these other jurisdictions, both the United States Court of Appeals for the Third Circuit and the United States District Court for the Western District of Pennsylvania, in *City of Erie v. Guaranty National Insurance Co.,* 935 F.Supp. 610 (W.D.Pa. 1996), *aff'd,* 109 F.3d 156 (3rd Cir.1997), have addressed the issue in terms of Pennsylvania law, attempting to predict how our high court would rule.[6] In affirming the order of the district court, the Third Circuit ruled that the tort of malicious prosecution occurs for insurance purposes at the time the underlying charges are filed. After careful consideration of these other authorities, we find the reasoning of the Third Circuit and majority view persuasive.

■ In determining when a tort occurs for insurance purposes, courts attempt to protect the reasonable expectations of the parties to the insurance contract. *Appalachian Insurance Co. v. Liberty Mutual Insurance Co.,* 676 F.2d 56 (3rd Cir.1982). Our courts have held that "[a]n occurrence [for purposes of determining insurance coverage] happens when the injurious effects of the negligent act *first manifest themselves* in a way that would put a reasonable person on notice of injury." *D'Auria v. Zurich Insurance Co.,* 352 Pa.Super. 231, 237–39, 507 A.2d 857, 861 (1986) (emphasis in original). *See also Keystone Automated Equipment Co. v. Reliance Insurance Co.,* 369 Pa.Super. 472, 535 A.2d 648 (1988) (the time when damages arise, that is, the time of ultimate injury, is the time that must be examined to determine if the claim falls within policy limitations).

Appellants argue that the injuries caused by the tort of Wrongful Use of Civil Proceedings do not occur at any single point in time, but are in the nature of a continuing injury. They maintain that, as such, we should adopt a "triple" or "multiple trigger" theory, under which an insurer is charged with a duty to defend and indemnify if the policy it issued is in effect at any time during the continuing tort. We reject this approach.

Our Supreme Court has thus far adopted the "multiple trigger" theory to determine the occurrence of injury for insurance coverage purposes only in cases involving toxic torts. *See J.H. France Refractories v. Allstate Insurance Co.,* 534 Pa. 29, 626 A.2d 502 (1993). The "multiple trigger" theory is applied in latent disease cases, like asbestosis or mesothelioma, because such injuries may not manifest themselves until a considerable time after the initial exposure causing injury occurs. The overriding concern in latent disease cases is that application of the *D'Auria* "first manifestation" rule would allow insurance companies to terminate coverage during the long latency period (of asbestosis); effectively shifting the burden of future claims away from the insurer to the insured (manufacturers of asbestos), even though the exposure causing injury occurred during periods of insurance coverage. *See Keene Corp. v. Insurance Co. of North America,* 667 F.2d 1034 (D.C.Cir.1981).

Here, we are not faced with a situation where the injuries, occasioned by the tort, lay dormant for extended periods. When the allegedly wrongful suit is filed, the injuries caused by the tort—humiliation, damage to reputation, suspense, physical hardship and legal expenses—manifest themselves and be-

6. Appellants contend that *City of Erie* and several of the cases from other jurisdictions involve factual situations in which the prior allegedly wrongful suit involved criminal charges rather than a civil suit, and that, as such, are not relevant to this case. The elements required to prove malicious (criminal) prosecution and Wrongful Use of Civil Proceedings mirror each other—both require proof that (1) the defendant instituted proceedings against plaintiff without probable cause; (2) with malice; and (3) the proceedings were terminated in favor of the plaintiff. *See Matter of Larsen, supra* at 440, 616 A.2d at 587; *City of Erie, supra* at 158. Moreover, malicious (civil) prosecution, (which has been codified as Wrongful Use of Civil Proceedings) developed from the action for malicious criminal prosecution. *Matter of Larsen, supra* at 439, 616 A.2d at 586. As such, for the purpose of determining when personal injury occurs for the purpose of triggering insurance coverage, there is no relevant distinction between a prior action that involves criminal charges and one that involves a civil suit.

come evident to a reasonable defendant and, by implication, to the initiator of the wrongful proceedings. Moreover, there is no intervening time period between the filing of the allegedly wrongful suit and the manifestation of the injury that would allow a risk aversive insurance company to terminate coverage.[7]

We conclude that the "first manifestation" rule applies and now hold that the tort of Wrongful Use of Civil Proceedings occurs for the purpose of determining insurance coverage when the allegedly wrongful suit is filed. Because neither the INA nor Selective policies were in effect at the time the allegedly wrongful suit was filed, neither is required to defend and indemnify appellants in the underlying suit for Wrongful Use of Civil Proceedings.

We additionally note that strong policy considerations underpin our decision to apply the "first manifestation" rule to cases involving Wrongful Use of Civil Proceedings. The adoption of a "multiple trigger" approach or one which triggers insurance coverage at the "time of favorable termination" would allow a tortfeasor with knowledge of his own potential liability to shift this burden to an unwary insurance company. Such an outcome would contravene the well-established rule that a person may not insure against an injury that has already occurred. *See Appalachian Insurance Co. v. Liberty Mutual Insurance Co.*, 676 F.2d 56 (3rd Cir.1982).

Appellants' final argument is that there are unresolved issues of fact which preclude the entry of judgment on the pleadings. Specifically, it is argued that the court improperly concluded that appellants were uninsured at the time of commencement of the prior lawsuit, that they shopped for insurance when it seemed clear that the prior lawsuit would be unsuccessful and that they sought to subsequently insure themselves against an injury that had already occurred. After reviewing the trial court opinion we reject this argument. Appellants have taken the comments of the court out of context and cast them as adjudicatory where no such intent existed. The court simply contemplated the consequences which might transpire if the "multiple trigger" approach were adopted. In any event, these allegedly unresolved factual issues are not material to the legal issues in this case, which required that we determine the scope of the INA and Selective insurance policies and when the tort of Wrongful Use of Civil Proceedings occurred for insurance coverage purposes. Based on the pleadings and supporting documentation, entry of judgment on the pleadings was appropriate.[8]

## CONCLUSION

We have determined that the tort of Wrongful Use of Civil Proceedings occurs for purposes of insurance coverage when the allegedly wrongful suit was filed. Here, this lawsuit was commenced on May 12, 1989. Because the INA and Selective "occurrence" policies were not in effect at that time, neither insurer is required to defend and indemnify appellants. Accordingly, the order of the trial court, granting judgment on the pleadings in favor of INA and Selective is affirmed.

Order affirmed.

DEL SOLE, J., files a dissenting opinion.

7. Our research has not uncovered a single jurisdiction that has adopted the "multiple trigger" approach in a case involving malicious prosecution.

8. Appellants Consulting Engineers, Inc. and Goldberg assert that Consulting Engineers did not initiate the allegedly wrongful suit and was not even in existence when this suit was filed. Thus, appellants contend that it was impossible for Consulting Engineers to obtain insurance coverage at that time. They also contend that they are a separate and distinct corporate entity from the corporate entity that initiated the allegedly wrongful suit. In the underlying complaint, Zlotnicki and Neuman allege that Consulting Engineers is a corporate successor to the party which initiated the allegedly wrongful suit and that it wrongfully continued the suit up to the time of termination.

Beyond boilerplate assertions, Consulting Engineers has not explained how these alleged facts are relevant to the present issue of when personal injury occurs for the purposes of insurance coverage in this case. This issue requires that we examine the relevant policies, determine the scope of coverage and ascertain if the facts alleged in the complaint for declaratory judgment trigger coverage. Whether Consulting Engineers is a proper party or corporate successor to the party that initiated the allegedly wrongful suit is irrelevant to the question of insurance coverage before us in this appeal.

DEL SOLE, Judge, dissenting.

Because I cannot so easily distinguish *Ludmer v. Nernberg*, 520 Pa. 218, 553 A.2d 924 (1989), I cannot agree with the majority's determination that the only date on which the tort of malicious prosecution occurs, for insurance purposes, is the date on which the allegedly wrongful suit is filed.

In *Ludmer v. Nernberg*, Nernberg had filed suit against Ludmer claiming that Ludmer, the treating physician for one of Nernberg's clients in a personal injury lawsuit, did not properly cooperate with him in the preparation of the personal injury action and interfered with the contractual relationship between Nernberg and his client. Summary judgment was granted, this court affirmed and the supreme court denied allocatur. Ludmer then filed suit against Nernberg under the Dragonetti Act, 42 Pa.C.S.A. §§ 8351–8354. Nernberg argued that the Dragonetti Act did not apply since his action, *i.e.*, the allegedly wrongful suit, was filed prior to its enactment. In fact, at the time the allegedly wrongful suit was filed, it was not an actionable tort to file such a suit as long as there was neither an arrest nor a seizure of property. It did not become a tort until the Dragonetti Act removed this requirement of arrest or seizure of property. 42 Pa.C.S.A. § 8351(b). The effective date of the Dragonetti Act was after Nernberg filed the allegedly wrongful suit but before Nernberg's suit terminated in Ludmer's favor. Our supreme court held that, because favorable termination is an element of a suit brought under the Dragonetti Act, the cause of action does not accrue until termination. Thus, the Act applied because it was in effect when the allegedly wrongful suit terminated.

The *Ludmer* court's determination that the cause of action does not accrue until the allegedly wrongful suit terminates means no tort has occurred until then. Under the majority's holding, the "occurrence" for which the insurance company is liable is the commencement of suit, an occurrence which, under *Ludmer*, is not yet a tort. Moreover, the statute itself refers not just to the commencement of suit but the "procurement, initiation or continuation" of civil proceedings. 42 Pa.C.S.A. § 8351(a).

The majority's policy consideration, of not allowing a tortfeasor to shift its burden to an unwary insurance company, is not persuasive either. In *Roess v. St. Paul Fire and Marine Insurance Co.*, 383 F.Supp. 1231 (M.D.Fla.1974), the court found that, because favorable termination is an element of the cause of action, the insurer whose coverage included the time of termination was liable. The court considered the same policy consideration and noted, "[I]t hardly seems apt to refer to the insurance company as 'unwary.' One simple question on its application form (concerning pending litigation) would serve to protect its position." *Id.* at 1235. See also *Royal Indemnity Co. v. Werner*, 979 F.2d 1299 (8th Cir.1992) (dissenting opinion by Gibson, J.); *Paterson Tallow Co., Inc. v. Royal Globe Insurance Companies*, 89 N.J. 24, 444 A.2d 579 (1982) (dissenting opinion by Schreiber, J.)

For these reasons, I dissent.