**Jen WANG, Appellant**

v.

**WHITETAIL MOUNTAIN RESORT, Appellee.**

Superior Court of Pennsylvania.

Submitted Aug. 13, 2007.

Filed Sept. 11, 2007.

Heidi J. DeBernardo, Greensburg, for appellant.

Hugh M. Emory, Paoli, for appellee.

BEFORE: MUSMANNO, PANELLA and TAMILIA, JJ.

OPINION BY TAMILIA, J.:

¶ 1 Jen Wang appeals from the March 12, 2007, Order dismissing her complaint and granting appellee Whitetail Mountain Resort's motion for judgment on the pleadings.

¶ 2 On August 10, 2006, appellant commenced the underlying proceedings by filing a complaint averring, *inter alia,* that on February 18, 2006, she and her boyfriend were snow tubing at the Whitetail Mountain Resort when she was struck by an oncoming snow tuber. Record, No. 20. The complaint averred the accident occurred after a Whitetail Mountain employee had negligently instructed the couple to exit the snow tube spillway in a direction that brought her directly into the path of the oncoming snow tuber. *Id.*

¶ 3 On October 31, 2006, Whitetail Mountain filed amended new matter alleging appellant had signed a document on February 18, 2006, which stated, in relevant part, the following:

### ASSUMPTION OF RISK

Understanding, acknowledging and agreeing to all of the risks involved, **I hereby agree to expressly and voluntarily accept and assume all risks involved in the sport of snow tubing.**

### RELEASE OF LIABILITY

In consideration of being allowed to use the tubing area at Whitetail Mountain Resort, **I HEREBY AGREE NOT TO SUE AND TO RELEASE, WHITETAIL MOUNTAIN CORP., ITS OWNERS, AGENTS AND/OR EMPLOYEES, FROM ANY AND ALL LIABILITY RELATED TO INJURY, PROPERTY LOSS OR OTHERWISE RELATED TO MY USE OF THE TUBING FACILITY, REGARDLESS OF ANY NEGLIGENCE ON THE PART OF WHITETAIL. I FURTHER AGREE TO INDEMNIFY AND DEFEND THE SAME, FROM ANY CLAIM FOR LIABILITY RELATED TO INJURY AS A RESULT OF MY OR MY CHILD'S USE OF THE FACILITIES, REGARDLESS OF ANY NEGLIGENCE.**

Record, No. 15, Defendant's Amended New Matter, Exb. C, Whitetail Adventure Tubing *Release & Assumption of Risk Agreement* (emphasis in original).

¶ 4 Appellant admitted to signing the Release & Assumption of Risk Agreement (release). Record, No. 14, Reply to Amended New Matter, at ¶ 16. In the wake of this admission, Whitetail Mountain filed a motion for judgment on the pleadings on January 11, 2007. Record, No. 10. Following a hearing on the matter, the trial court issued the underlying Order and Opinion now subject to our consideration.

After a notice of appeal was filed, the trial court issued a Rule 1925(b) Order with which appellant complied. *See generally,* Pa.R.A.P. 1925, **Opinion in Support of Order.** Shortly thereafter, the trial court issued a second Opinion pursuant to Rule 1925(a) incorporating its prior Opinion by reference.

¶ 5 Appellant asks us to review the following issue:

Whether a release purportedly exonerating a snow tubing facility from liability for injuries caused by the inherent risks of snow tubing, regardless of negligence on the part of the facility, precludes the signer from suing the facility for injuries caused by the negligent actions of its employee in directing the signer to move into the path of another snow tuber where the wording of the release does not establish that that type of negligent conduct was within the contemplation of the parties at the time of signing?

Appellant's brief at 4.

¶ 6 Our standard of review over an Order granting a motion for judgment on the pleadings requires us to determine whether the trial court erred as a matter of law or disregarded issues of fact which should have been submitted to the jury. *Wilcha v. Nationwide Mut. Fire Ins. Co.,* 887 A.2d 1254, 1258 (Pa.Super.2005), *citing Consulting Engineers, Inc. v. Insurance Co. of North America,* 710 A.2d 82, 83–84 (Pa.Super.1998). Our scope of review is plenary. *Id.*

¶ 7 In applying this standard and scope, we must accept all of the nonmoving party's well-pled facts as true. *Wilcha, supra* at 1258, *citing Consulting Engineers, Inc., supra* at 83–84. Conversely, we may only consider facts that would undermine the non-moving party's position as true when the non-moving party has admitted such facts. *Id.* In conducting

our inquiry, we confine ourselves to the pleadings and any properly attached documents or exhibits. *Id.* We will affirm the grant of a motion for judgment on the pleadings only when a case is "free and clear from doubt such that a trial would prove fruitless." *Id.*

¶ 8 In support of the issue raised, appellant initially contends this Court's recent decision in *Chepkevich v. Hidden Valley Resort,* 911 A.2d 946 (Pa.Super.2006), is on all fours with the current controversy. In *Chepkevich,* our Court noted that while releases generally are held in disfavor and must be strictly construed against parties asserting them, releases are enforceable as long as the following requirements are met: 1) the release does not undermine any legal policy; 2) the release is a contract amongst individuals relating to their private affairs; 3) each party to the release was a free bargaining agent; and, 4) the release spells out the intent of the parties with particularity. *Chepkevich, supra* at 951, *quoting Beck–Hummel v. Ski Shawnee, Inc.,* 902 A.2d 1266, 1269 (Pa.Super.2006).

■ ¶ 9 The particularity inquiry is the focus of this case.[1] When a releasing party receives a release drafted by a releasor, the releasing party must have been aware of and understood the terms of the release before his agreement can be deemed a particularized expression of the intent to assume risk. *Chepkevich,* at 951, *citing* **Restatement (Second) of Torts** § 496B, **Express assumption of risk.** In determining whether a releasing party had such awareness and understanding, we consider: 1) the release's placement in the docu-

ment; 2) the size of the release's print; and, 3) whether the release is highlighted in some fashion. *Id., citing Beck–Hummel, supra* at 1274.

■ ¶ 10 The release at issue was placed prominently in a separately titled paragraph in the middle of a single page document; the release was in a font larger then that used to draft the other portions of the form; finally, the release is highlighted through the use of emboldened capital letters. Record, No. 15, Defendant's Amended New Mater, Exb. C, Whitetail Adventure Tubing *Release & Assumption of Risk Agreement.* We must, as application of these factors proves, charge appellant with knowledge and understanding of the release. *Id.; see contra Chepkevich, supra* at 951 (finding a release that was "printed in the same, relatively small font as the remaining text and [which was] located in the final sentence of the first paragraph" to be unenforceable). The release in these circumstances is, unlike the release at issue in *Chepkevich,* enforceable as it operates as a particularized expression of appellant's intention to assume the risk of activities "related to" snow tubing at Whitetail Mountain. Record, No. 15, Defendant's Amended New Matter, Exb. C, Whitetail Adventure Tubing *Release & Assumption of Risk Agreement.*

¶ 11 Appellant also contends that in *Wenger v. Ziegler,* 424 Pa. 268, 226 A.2d 653 (1967), our Supreme Court held that a release will only cover matters "within the contemplation of the parties" when the release was executed. Appellant's brief at

---

1. The trial court concluded the release did not contravene public policy. Trial Court Opinion, Walsh, J., 3/12/07, at 3, *citing Zimmer v. Mitchell & Ness,* 253 Pa.Super. 474, 385 A.2d 437 (1978), *affirmed,* 490 Pa. 428, 416 A.2d 1010 (1980) (additional citations omitted). The trial court further concluded neither par-

ty raised an issue as to whether the release was an individual contract relevant to the relationship between the parties or as to whether appellant was a free bargaining agent. *Id.* at 4. Appellant does not attack these conclusions and, therefore, they must stand.

8. According to appellant, "It is clearly a factual question as to whether the release of liability releases Whitetail from liability for injuries sustained as a result of the negligent directives of employees by Whitetail which caused Wang's injuries, in that it must be determined whether it was the type of conduct that was 'within the contemplation of the parties.'" *Id.* at 13. We disagree.

¶ 12 While the *Wenger* Court did mention this Court's adjudication in *General Mills, Inc. v. Snavely*, 203 Pa.Super. 162, 199 A.2d 540 (1964), wherein we noted a release ordinarily covers matters contemplated by the parties when the release was executed, the Court then looked to the language of the release *sub judice* in determining what actually was contemplated by the parties to the dispute. In this case, that is exactly what the trial court did—it looked to the broad language of the release and determined appellant had exonerated Whitetail Mountain from **"ALL LIABILITY RELATED TO INJURY, PROPERTY LOSS OR OTHERWISE RELATED TO MY USE OF THE TUBING FACILITY, REGARDLESS OF ANY NEGLIGENCE ON THE PART OF WHITETAIL."** Record, No. 15, Defendant's Amended New Matter, Exb. C, Whitetail Adventure Tubing *Release & Assumption of Risk Agreement* (emphasis in original). Looking to the unambiguous language of an agreement, in this case appellant's particularized expression of the intent to assume the risks related to snow tubing, is all that must be done to determine what is contemplated by a party when entering into a release or any other contractual arrangement. *See e.g., Gen. Refractories Co. v. Ins. Co. of N. America*, 906 A.2d 610, 612 (Pa.Super.2006) ("The intent of the parties to a written contract is deemed to be embodied in the writing itself, and when the words are clear and unambiguous the intent is to be gleaned exclusively from the express language of the agreement.") (citation omitted).

¶ 13 We conclude the trial court did not err as a matter of law in determining the release to be enforceable or in effectuating its plain language. *Wilcha, supra* at 1258, *citing Consulting Engineers, Inc., supra* at 83–84

¶ 14 Order affirmed.

¶ 15 MUSMANNO, J., notes his dissent.