# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Pennsylvania Manufacturers'     :
Association Insurance Company,     :
             Petitioner     :
             :
           v.     : No. 330 M.D. 2015
             : Argued: December 12, 2016
Johnson Matthey, Inc. and     :
Pennsylvania Department of     :
Environmental Protection,     :
             Respondents     :

BEFORE:     HONORABLE RENÉE COHN JUBELIRER, Judge
                  HONORABLE ANNE E. COVEY, Judge
                  HONORABLE JAMES GARDNER COLINS, Senior Judge

**OPINION BY**
**SENIOR JUDGE COLINS**                       **FILED: April 21, 2017**

This case is a petition for review filed by Pennsylvania Manufacturers' Association Insurance Company (Insurer) against Johnson Matthey Inc. (JMI) and the Pennsylvania Department of Environmental Protection (DEP) seeking a declaratory judgment that it has no obligation to defend or indemnify JMI with respect to a lawsuit filed by DEP against JMI seeking recovery of costs for cleanup of environmental contamination. Before this Court is Insurer's motion for summary relief.[1] For the reasons set forth below, we deny Insurer's motion.

---

[1] Insurer denominated its motion a "Motion for Summary Judgment." Because this action was brought in this Court's original jurisdiction by petition for review under Pa. R.A.P. 1501(a)(3), Insurer's motion is properly characterized as a motion for summary relief under Pa. R.A.P. 1532(b), rather than a motion for summary judgment under the Rules of Civil Procedure and the Court will treat it as having been filed pursuant to Rule 1532(b). *Summit School, Inc. v. Department of Education*, 108 A.3d 192, 193 n.1 (Pa. Cmwlth. 2015). The standards that we apply to a motion for summary relief are, as is discussed below, the same as for a motion for summary judgment. *Id.*

Insurer issued comprehensive general liability (CGL) policies insuring JMI's predecessor companies that were in effect from at least April 1, 1969 to April 1, 1979. (Insurer's Amended Petition for Review ¶¶12, 14 & Exs. A, B; JMI Answer to Amended Petition for Review ¶12, JMI Counterclaims ¶8 & Ex. B.) JMI alleges that Insurer also insured its predecessor companies between 1955 or 1957 and April 1, 1969, but the existence of coverage for periods before April 1, 1969 is disputed. (Insurer's Amended Petition for Review ¶15; JMI Answer to Amended Petition for Review ¶¶12, 15, JMI Counterclaims ¶6 & Ex. A; Insurer's Answer to Counterclaims ¶6.) Insurer did not insure JMI or its predecessor companies after April 1, 1979. (Insurer's Amended Petition for Review ¶20; JMI Answer to Amended Petition for Review ¶¶12, 20; Insurer's Motion for Summary Judgment ¶24; JMI Answer to Insurer's Motion for Summary Judgment ¶24.) The aggregate property damage limits of liability of the CGL policies covering the period from April 1, 1971 to April 1, 1979 have been exhausted. (Insurer's Amended Petition for Review ¶13; JMI Answer to Amended Petition for Review ¶13.) The property damage limits of the April 1, 1969 to April 1, 1970 and April 1, 1970 to April 1, 1971 policies are not exhausted. (Insurer's Amended Petition for Review ¶14; JMI Answer to Amended Petition for Review ¶14.)

On May 12, 2010, DEP named JMI as a defendant in a civil action captioned *Commonwealth of Pennsylvania Department of Environmental Protection v. Whittaker Corporation and Johnson Matthey Inc*., filed in the Eastern District of Pennsylvania, Civil Action No. 08-6010 (the Underlying Action). In the Underlying Action, DEP alleges that from 1951 through April 1, 1969, a JMI predecessor company owned the Bishop Tube Site (the Site), a property in East Whiteland Township, Chester County, Pennsylvania, and manufactured and

2

processed metal alloy tubes and associated equipment at the Site. (Underlying Action Amended Complaint ¶¶1, 7.) DEP alleges that the JMI predecessor companies and a corporation unaffiliated with JMI that owned the Site from 1969 to 1974 "used hazardous substances, including trichloroethylene ('TCE')" in their operations at the Site. (*Id.* ¶9.) DEP further alleges that "[a]s a result of Defendants operations, hazardous substances, including TCE, were disposed into the environment, including the Site's soils and groundwater," and that "[s]ubsurface migration of contaminated groundwater from the Site has contaminated the aquifer beneath the Site and beneath off-Site properties." (*Id.* ¶¶10-11.) Based on these allegations, DEP asserts that JMI and the later owner of the Site are liable to DEP under the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 (CERCLA)[2] and the Hazardous Sites Cleanup Act[3] for costs incurred in remediating the environmental damage caused by the release of hazardous substances at the Site. (Underlying Action Amended Complaint ¶¶27-29, 33-34.)

Insurer on June 2, 2010 agreed to defend JMI with respect to the Underlying Action subject to a reservation of rights. (JMI Counterclaims ¶20; Insurer's Answer to JMI Counterclaims ¶20.) On September 27, 2010, Insurer advised JMI that it "continues to reserve its right to assert the following defenses: lost policies, exhaustion, owned property, voluntary payments and pre-tender costs, allocation, and other insurance," but that it "is no longer asserting the following defenses in this matter: late notice, failure to cooperate, pollution exclusion (in the

---

[2] 42 U.S.C. §§ 9601-9675.

[3] Act of October 18, 1988, P.L. 756, *as amended*, 35 P.S. §§ 6020.101-6020.1305.

3

4/1/70-4/1/71 policy), trigger-of-coverage, and the definition of occurrence" with respect to coverage of the Underlying Action. (9/27/10 Letter from Insurer's Counsel to JMI Counsel, JMI Answer to Insurer's Motion for Summary Judgment Hagan Aff. Ex. 3.) Insurer defended JMI in the Underlying Action from 2010 until 2015. (JMI Counterclaims ¶¶20-24; Insurer's Answer to JMI Counterclaims ¶¶20-24.)

In 2015, Insurer notified JMI that it would no longer defend JMI in the Underlying Action and filed the instant petition for review seeking a declaratory judgment that it has no duty to defend or indemnify JMI in the Underlying Action.[4] In its petition for review, Insurer asserts that the Underlying Action is not within the coverage provided by the April 1, 1969 to April 1, 1970 and April 1, 1970 to April 1, 1971 policies or any earlier policies because the contamination at the Site was not detected during the period that those policies were in effect. (Insurer's Amended Petition for Review ¶¶21, 23-25.) JMI filed an answer to the petition for review disputing Insurer's contention that the policies do not provide coverage and asserting counterclaims for a declaratory judgment that Insurer is required to defend and indemnify it with respect to the Underlying Action and for breach of contract.

Insurer has now moved for summary relief granting the declaratory judgment sought in its petition for review. Insurer bases its motion on the contentions that as a matter of law liability insurance coverage for environmental property damage claims is triggered only at the time the property damage is first

---

[4] Insurer does not seek relief against DEP and named DEP as a respondent solely because its interests as the plaintiff in the Underlying Action would be affected by the denial of coverage. *See Vale Chemical Co. v. Hartford Accident & Indemnity Co.*, 516 A.2d 684, 686-88 (Pa. 1986).

manifested and that the first environmental testing that detected TCE was in 1988. JMI and DEP oppose the motion both on the law and on the grounds that summary disposition is not proper because there are disputed issues of fact and discovery is not complete.

Rule 1532(b) of the Rules of Appellate Procedure provides that "[a]t any time after the filing of a petition for review in an appellate or original jurisdiction matter the court may on application enter judgment if the right of the applicant thereto is clear." Pa. R.A.P. 1532(b). A motion for summary relief is evaluated according to the same standards as a summary judgment motion. *Myers v. Commonwealth*, 128 A.3d 846, 849 (Pa. Cmwlth. 2015); *Summit School, Inc. v. Department of Education*, 108 A.3d 192, 193 n.1 (Pa. Cmwlth. 2015); *see also* Pa. R.A.P. 1532 Note (stating that Pa. R.A.P. 1532(b) "authorizes immediate disposition of a petition for review, similar to the type of relief envisioned by the Pennsylvania Rules of Civil Procedure regarding judgment on the pleadings and peremptory and summary judgment"). Summary relief may be granted only if there are no genuine disputes of material fact and, viewing the evidence in the light most favorable to the nonmoving party, the movant's right to judgment in its favor is clear as a matter of law. *Hospital & Healthsystem Association of Pennsylvania v. Commonwealth*, 77 A.3d 587, 602 (Pa. 2013); *Leach v. Commonwealth*, 118 A.3d 1271, 1277 n.5 (Pa. Cmwlth. 2015) (*en banc*), *aff'd*, 141 A.3d 426 (Pa. 2016).

The central issue raised by Insurer's motion is what event must take place within the policy period to trigger coverage under Insurer's CGL policies. Identifying the appropriate trigger of coverage under an insurance policy turns upon the language of the policy. *Pennsylvania National Mutual Casualty*

5

*Insurance Co. v. St. John*, 106 A.3d 1, 14 (Pa. 2014); *Warrantech Consumer Products Services, Inc. v. Reliance Insurance Co. in Liquidation*, 96 A.3d 346, 357 (Pa. 2014).

> The goal in construing and applying the language of an insurance contract is to effectuate the intent of the parties as manifested by the language of the specific policy. When the language of an insurance policy is plain and unambiguous, a court is bound by that language. Alternatively, if an insurance policy contains an ambiguous term, "the policy is to be construed in favor of the insured to further the contract's prime purpose of indemnification and against the insurer, as the insurer drafts the policy, and controls coverage." Contract language is ambiguous if it is reasonably susceptible to more than one construction and meaning. Finally, the language of the policy must be construed in its plain and ordinary sense, and the policy must be read in its entirety.

*St. John*, 106 A.3d at 14 (citations omitted, quoting *401 Fourth Street Inc. v. Investors Insurance Group*, 879 A.2d 166 (Pa. 2005)). The interpretation of the language of an insurance policy is a question of law. *Babcock & Wilcox Co. v. American Nuclear Insurers*, 131 A.3d 445, 456 (Pa. 2015); *St. John*, 106 A.3d at 14.

Because Insurer seeks a declaratory judgment with respect to its duty to defend, the Court must also consider the allegations of the complaint in the Underlying Action to determine whether it alleges facts that could trigger coverage under the policies. *American and Foreign Insurance Co. v. Jerry's Sport Center, Inc.*, 2 A.3d 526, 541 (Pa. 2010); *Kvaerner Metals Division of Kvaerner U.S., Inc. v. Commercial Union Insurance Co.*, 908 A.2d 888, 896 (Pa. 2006); *Consulting Engineers, Inc. v. Insurance Co. of North America*, 710 A.2d 82, 84 (Pa. Super. 1998), *aff'd*, 743 A.2d 911 (Pa. 2000). If a complaint against the insured pleads

6

facts that are potentially within the scope of the policy's coverage, the insurer has a duty to defend the action until all covered claims are removed from the action. *Jerry's Sport Center, Inc.*, 2 A.3d at 541-42; *Penn-America Insurance Co. v. Peccadillos, Inc.*, 27 A.3d 259, 265 (Pa. Super. 2011); *Consulting Engineers, Inc.*, 710 A.2d at 84.

The determination of when coverage is triggered depends on whether the insurance policy is an "occurrence" policy or a "claims made" policy. An "occurrence" policy provides insurance coverage for liabilities arising while the policy is in effect, whereas a "claims made" policy protects the insured with respect to claims made against it during the policy period, regardless of when the liability arose. *St. John*, 106 A.3d at 5 n.3; *Kvaerner Metals Division of Kvaerner U.S., Inc.*, 908 A.2d at 892 n.1; *Consulting Engineers, Inc.*, 710 A.2d at 85. The insurance policies here are "occurrence" policies, not "claims made" policies. The April 1, 1969 to April 1, 1970 and April 1, 1970 to April 1, 1971 CGL policies provide with respect to property damage coverage:

> The company [Insurer] will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of
>
> …
> Coverage B. property damage
> to which this insurance applies, caused by an occurrence, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but the company shall not be obligated to pay any claim or judgment or to defend any suit

7

after the applicable limit of the company's liability has been exhausted by payment of judgments or settlements.

(Insurer's Amended Petition for Review ¶16 & Ex. C at 2 § I; JMI Counterclaims ¶8 & Ex. B at J8433 § I.) Both policies also provide that "[t]his insurance applies only to bodily injury or property damage which occurs during the policy period within the policy territory" and define "occurrence" as "an accident, including injurious exposure to conditions, which results, during the policy period, in bodily injury or property damage neither expected nor intended from the standpoint of the insured." (Insurer's Amended Petition for Review ¶¶17-18 & Ex. C at 2 § IV, Ex. D at 2; JMI Counterclaims ¶8 & Ex. B at J8434 § IV, J8447.)

The trigger of coverage under an "occurrence" insurance policy is ordinarily the first manifestation of the injury that is alleged to have been caused by the insured. *St. John*, 106 A.3d at 15-23; *Consulting Engineers, Inc.*, 710 A.2d at 87-88; *D'Auria v. Zurich Insurance Co.*, 507 A.2d 857, 861 (Pa. Super. 1986). "Occurrence" policies covering periods after the first manifestation of the harm are not triggered, even if the causal connection to the insured is not known until those later policy periods or further consequences of the insured's conduct occur in those later policy periods. *St. John*, 106 A.3d at 3-4, 15-24 (denying coverage for property damage claims under policies in effect from July 2004 to July 2006 where the harm caused by insured's negligence began to become apparent by April 2004); *Consulting Engineers, Inc.*, 710 A.2d at 83, 87-88 (no coverage for malicious prosecution for suit filed in 1989 under insurance policies in effect from 1990 to 1992 and later periods); *D'Auria*, 507 A.2d at 858, 861-62 (harm from defendant's medical malpractice that should have been diagnosed by 1963 when

8

physician last treated plaintiff was not covered by "occurrence" policies in effect in 1970s and 1980s when injury worsened and suit was filed).

This limitation of coverage to the policy in effect at the time of first manifestation has been based on two grounds. Where the policies contain language that bodily injury and property damage in the policy period includes "continuation, change or resumption of that 'bodily injury' or 'property damage' after the end of the policy period," that language supports the conclusion that additional harm after first manifestation is covered only under the policy in effect at the time of first manifestation. *St. John*, 106 A.3d at 21. In addition, policy considerations require denial of coverage under post-manifestation "occurrence" policies because allowing coverage would permit the insured to obtain coverage for a liability that is already in existence. *Consulting Engineers, Inc.*, 710 A.2d at 88; *D'Auria*, 507 A.2d at 862.

With respect to time periods <u>before</u> the first manifestation of injury, our Supreme Court in *J.H. France Refractories Co. v. Allstate Insurance Co.*, 626 A.2d 502 (Pa. 1993) expanded the trigger of coverage with respect to asbestos bodily injury claims and held that all "occurrence" policies from the date of exposure to the date of first manifestation are triggered. *Id.* at 506-07. The Court concluded that because asbestos causes undetected injury at the time of exposure and continues to cause undetected injury up to the time of manifestation of recognizable disease, all periods from exposure to manifestation satisfy the requirement that bodily injury occur during the policy period. *Id.* at 505-07. In *St. John*, our Supreme Court held that *J.H. France Refractories Co.* is an exception to the general rule that first manifestation of injury is the trigger of coverage and that its multiple trigger of coverage did not apply to property damage claims where the

9

harm became apparent within a short period of time after the insured's tortious acts. 106 A.3d at 22-23.

Insurer argues that the *St. John* decision limits *J.H. France Refractories Co.* to asbestos injury and similar bodily injury claims and that, under that decision, only first manifestation can trigger coverage for the environmental contamination claims in the Underlying Action. We do not agree. Contrary to Insurer's characterizations, neither the Supreme Court's rejection of a multiple trigger of coverage in *St. John* nor the Court's reasoning in that opinion suggests that *J.H. France Refractories Co.* is inapplicable to property damage coverage for undetected environmental contamination.

In *St. John*, the question decided by the Court was whether coverage continued to be triggered under policies in effect after property damage was known to have occurred, not whether coverage was triggered in the period between the insured's tortious act and the first manifestation of harm. The property damage for which coverage was sought in that case consisted of harm to dairy cows from water contamination that was caused by the insured's installation of defective plumbing. Three policy periods were at issue, July 1, 2003 to July 1, 2004, July 1, 2004 to July 1, 2005, and July 1, 2005 to July 1, 2006. 106 A.3d at 4. The insured's plumbing was first put in use in July 2003 and in April 2004, the cows began to suffer illness and milk production dramatically decreased. *Id.* at 3-4, 17. The Court held that, under these facts, only the July 1, 2003 to July 1, 2004 policy period was triggered and not the post-manifestation July 1, 2004 to July 1, 2005 and July 1, 2005 to July 1, 2006 policies. The issue in this case, by contrast, is not whether post-manifestation policies are triggered, but whether there is coverage

10

under policies in effect while environmental contamination is in progress and before any manifestation has occurred.

Although the Court in *St. John* held that the multiple trigger of coverage is an exception to the first manifestation rule and declined to adopt a rule that a multiple trigger of coverage applies "to all cases involving 'continuous, progressive property damage over successive policy periods,'" 106 A.3d at 23, the Court did not limit *J.H. France Refractories Co.* to asbestos or bodily injury claims. Rather, the Court held that the justification for the multiple trigger of coverage was not the peculiar nature of asbestos disease, but the long latency of the claim for which coverage was sought. *St. John*, 106 A.3d at 22-23. The Court explained,

> [t]he "multiple trigger" theory is applied in latent disease cases, like asbestosis or mesothelioma, because such injuries may not manifest themselves until a considerable time after the initial exposure causing injury occurs. The overriding concern in latent disease cases is that application of the *D'Auria* "first manifestation" rule would allow insurance companies to terminate coverage during the long latency period (of asbestosis); effectively shifting the burden of future claims away from the insurer to the insured (manufacturers of asbestos), even though the exposure causing injury occurred during periods of insurance coverage.

*Id.* (quoting *Consulting Engineers, Inc.*). The Court concluded that the *J.H. France Refractories Co.* multiple trigger of coverage remains a proper interpretation of "occurrence" policies where those long latency circumstances are present, and held that the multiple trigger did not apply to the claims before it because the property damage manifested within a year and did "not present the problematic scenario where a risk averse insurer takes steps to limit or terminate

11

coverage, in anticipation of future claims that have not yet materialized but can be predicted with near certainty." 106 A.3d at 23.

Here, the damage alleged in the complaint in the Underlying Action is soil and water contamination that occurred gradually at indefinite points in time as a result of a JMI's predecessor's use of TCE and other hazardous substances at the Site between 1951 and 1969. (Underlying Action Amended Complaint ¶¶7, 9-11.) The first date that the complaint in Underlying Action alleges that there was any awareness of possible property damage is 1980, when the United States Department of Environmental Protection listed the Site as potentially contaminated. (*Id.* ¶12.) In addition, Insurer contends that the TCE contamination from the Site was first found in 1988. (Insurer's Motion for Summary Judgment ¶13.) On the record before us, this case therefore presents the long latency of continuing, undetected injury or damage that supports a trigger of insurance coverage prior to manifestation under the Supreme Court's decisions in *J.H. France Refractories Co.* and *St. John*.

Moreover, applying the rule that only first manifestation triggers coverage in this case would be contrary to the policy language of Insurer's CGL policies. The policies provide coverage for "property damage which occurs during the policy period" (Insurer's Amended Petition for Review ¶17 & Ex. C at 2 § IV; JMI Counterclaims ¶8 & Ex. B at J8434 § IV), not for property damage that is discovered or manifested itself during the policy period. "Property damage" is in turn defined as "injury to or destruction of tangible property" (Insurer's Amended Petition for Review ¶18 & Ex. D at 2; JMI Counterclaims ¶8 & Ex. B at J8444), and is not limited to visible or detected harm to property. Contamination of property is an injury to property. Therefore, if contamination occurs within a

12

policy period, the coverage requirement of "property damage which occurs during the policy period" is satisfied, regardless of whether the contamination is detected or known at the time. *See J.H. France Refractories Co.*, 626 A.2d at 505-07 (occurrence of undetected subclinical bodily injury during policy period satisfies the requirement of bodily injury during the policy period). The date of manifestation, in contrast, does not necessarily correspond to the time that this property damage occurred. Instead, the date of manifestation of the harm from environmental contamination may merely be a result of when testing happens to be done to determine whether any contamination exists.

Finally, limiting coverage for environmental contamination claims to policies in effect at the time that contamination is first detected would present the "problematic scenario" of permitting insurers "to limit or terminate coverage, in anticipation of future claims that have not yet materialized but can be predicted with near certainty" that requires departure from the first manifestation rule. *St. John*, 106 A.3d at 23. At the time that the contamination at the Site is alleged to have begun, CGL insurance policies did not exclude coverage for pollution. *Couch on Insurance 3d* § 127:3 (2016); *Comment: The Pollution Exclusion Clause in Pennsylvania*, 56 U. Pitt. L. Rev. 885, 892-93 (Summer 1995). At least one of the policies at issue here contains no pollution exclusion. (9/27/10 Letter from Insurer's Counsel to JMI Counsel, JMI Answer to Insurer's Motion for Summary Judgment Hagan Aff. Ex. 3; 9/17/08 Letter from Insurer's Counsel to JMI Counsel at 3, Insurer's Summary Judgment Reply Br. Kerns Aff. Ex. M.) A pollution exclusion was developed by the insurance industry in 1970 that excluded some environmental damage claims and this exclusion was added by insurers to standard CGL insurance policies after regulatory approval was obtained. *Couch on*

13

*Insurance 3d* § 127:3; *Comment: The Pollution Exclusion Clause in Pennsylvania*, 56 U. Pitt. L. Rev. at 893-95. In the 1980s, following the enactment of CERCLA, the insurance industry undertook further efforts to bar coverage for environmental contamination claims by modifying the pollution exclusion in standard CGL policies to exclude all claims arising out of any "actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants at any time." *Couch on Insurance 3d* §§ 127:3, 127:13; *see also Comment: The Pollution Exclusion Clause in Pennsylvania*, 56 U. Pitt. L. Rev. at 894 n.55.

We therefore conclude that the environmental contamination claims at issue here fall within the *J.H. France Refractories Co.* exception to the first manifestation rule and that coverage under Insurer's April 1, 1969 to April 1, 1970 and April 1, 1970 to April 1, 1971 policies is triggered if undetected environmental contamination occurred during the policy period. Because the complaint against JMI in the Underlying Action alleges gradual contamination that began before and continued through the policy periods and Insurer has not shown that the contamination did not occur in the policy periods or that it first manifested before the policy periods, it is not entitled to a declaratory judgment that it has no duty to defend or indemnify JMI. Accordingly, the Court enters the following order denying Insurer's motion for summary relief.[5]

_____
JAMES GARDNER COLINS, Senior Judge

---

[5] Because we have rejected Insurer's argument that the policies were not triggered, we do not address JMI's argument that Insurer waived the right to dispute trigger of coverage when it withdrew its reservation of rights on that issue on September 27, 2010.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | |
|---|---|
| Pennsylvania Manufacturers' Association Insurance Company,          Petitioner | : <br> : <br> : <br> : |
| v. | :   No. 330 M.D. 2015 <br> : |
| Johnson Matthey, Inc. and Pennsylvania Department of Environmental Protection,          Respondents | : <br> : <br> : <br> : |

## **O R D E R**

AND NOW, this 21st day of April, 2017, upon consideration of Petitioner's motion for summary relief (styled by Petitioner as a "Motion for Summary Judgment"), Respondents' answers thereto, the briefs of the parties with respect thereto, and oral argument, it is hereby ORDERED that said motion for summary relief is DENIED.

_____
JAMES GARDNER COLINS, Senior Judge