IN THE COMMONWEALTH COURT OF PENNSYLVANIA

George P. Desjardins, Jr., M.D.,    :
            :
       Petitioner    :
            :
    v.    : No. 506 M.D. 2012
            : Argued: December 10, 2019
Michael F. Consedine, in his    :
official capacity as Insurance    :
Commissioner of the    :
Commonwealth of Pennsylvania,    :
and the Pennsylvania Insurance    :
Department Medical Care    :
Availability and Reduction of Error    :
Fund ("Mcare"),    :
            :
       Respondents    :
            :
    v.    :
            :
Team Health, Inc., Alliant Insurance    :
Services, Inc., and Western    :
Litigation, Inc., and Lexington    :
Insurance Company,    :
            :
Additional Respondents    :

BEFORE:   HONORABLE MICHAEL H. WOJCIK, Judge
           HONORABLE CHRISTINE FIZZANO CANNON, Judge
           HONORABLE ELLEN CEISLER, Judge

<u>OPINION NOT REPORTED</u>

MEMORANDUM OPINION
BY JUDGE WOJCIK                  FILED: January 6, 2020

       Before the Court are the cross-applications for summary relief of

George P. Desjardins, Jr., M.D. (Doctor) and Michael F. Consedine, in his official

capacity as Insurance Commissioner of the Commonwealth of Pennsylvania,[1] and the Pennsylvania Insurance Department (Department) Medical Care Availability and Reduction of Error Fund (collectively, Mcare)[2] to the petition for review filed by Doctor in our original jurisdiction seeking declaratory judgment and restitution. We grant Mcare's Cross-Application for Summary Relief; deny Doctor's Application for Summary Relief; and dismiss Doctor's Petition for Review.

The relevant stipulated facts of this case are as follows. On December 1, 2008, Emergency Physician Associates of Pennsylvania, P.C., an affiliate of TeamHealth, Inc. (TeamHealth) hired Doctor as a full-time independent contractor. On that date, Doctor was added to TeamHealth's professional liability insurance policy, which Lexington Insurance Company (Lexington) underwrote (Lexington policy). The policy was effective from June 1, 2009 through June 1, 2010, and covered Doctor for "damages resulting from a medical incident arising out of professional services . . . [where such] medical incident [took] place on or after the

---

[1] We note that Michael F. Consedine is no longer the Insurance Commissioner of the Commonwealth of Pennsylvania. However, Rule 503(c) of the Pennsylvania Rules of Appellate Procedure allows for the automatic substitution of his successor, Jessica K. Altman, in this matter.

[2] The prior Health Care Services Malpractice Act, Act of October 15, 1975, P.L. 390, *as amended*, formerly 40 P.S. §§1301.101-1301.1006, repealed by the Act of March 20, 2002, P.L. 154, established the Medical Professional Catastrophe Loss Fund (CAT Fund). The CAT Fund was funded by a surcharge upon the premium the provider paid for primary coverage and was set at 10% of the provider's annual premium for the primary coverage, or $100, whichever was greater. The Medical Care Availability and Reduction of Error Act (Mcare Act), Act of March 20, 2002, P.L. 154, *as amended*, 40 P.S. §§1303.101-1303.1115, replaced the Health Care Services Malpractice Act and established the Mcare Fund. The Mcare Fund obtains funding from an annual assessment levied on health care providers and is based on the prevailing primary premium for each health care provider. Sections 1101 through 1115 of the Mcare Act were repealed by the Act of October 9, 2009, P.L. 537. Thus, a "surcharge" and an "assessment" are the same thing, depending upon the statute under which they were established.

retroactive date and before the end of the policy period." Petition for Review at 4. The retroactive date of the Lexington policy was December 1, 2008, the date on which TeamHealth hired Doctor. Doctor's coverage under the Lexington policy was reported to Mcare on Form 216 and the required assessment was paid on July 9, 2009 and received by Mcare on July 24, 2009. *Id.*

At some point after July 24, 2009, Mcare provided a list of outstanding problems to Alliant Insurance Services, Inc. (Alliant), TeamHealth's insurance broker, reporting, among other things, that the retroactive date of Doctor's coverage should have been reported as June 1, 2009. Petition for Review at 5. In response, Alliant sent Mcare a corrective Form 216 identifying Doctor's retroactive date under the Lexington policy as June 1, 2009. *Id.* Notwithstanding the corrective Form 216, the actual retroactive date set forth in the Lexington policy remained December 1, 2008. *Id.*

On December 30, 2009, Doctor received notice of a lawsuit filed by Shanna and Keith Hallman (Hallman lawsuit). The Hallmans initiated a professional negligence claim against Doctor and others in federal court, alleging that their son was improperly treated and released from a medical facility on January 27, 2009, and died from asthma-related complications. Doctor subsequently settled the Hallman lawsuit for $1,000,000.00, $500,000.00 for which he claims that Mcare is responsible. Petition for Review at 7; Section 712 of the Mcare Act, 40 P.S. §1303.712.[3]

---

[3] The Mcare Fund is used to pay claims against health care providers for losses or damages awarded in medical professional liability actions that exceed the provider's basic insurance coverage; this is known as "excess coverage." 40 P.S. §1303.712.

On February 2, 2010, the Hallman lawsuit was reported to Mcare via Form C-416, which requested that Mcare provide excess coverage for Doctor. Petition for Review at 6. Mcare denied the request for excess coverage because its records indicated that "the first date of reported Lexington basic insurance coverage for which Mcare received a Remittance Advice and applicable assessment for Mcare coverage for [Doctor] was June 1, 2009, after the reported date of malpractice." *Id.* According to Doctor, Mcare had no basis upon which to deny excess coverage because the Lexington policy was in place at the time that the Hallman claim was made and was reported to Mcare prior to the claim. *Id.*

On August 8, 2012, Doctor filed a petition for review in this Court's original jurisdiction setting forth a request for declaratory judgment, seeking an order to the effect that Mcare had no legal basis upon which to deny Doctor's request for excess coverage. Doctor also seeks restitution against Mcare for its unjustified and improper refusal to reimburse Doctor for the amounts he was required to pay on Mcare's behalf to settle the Hallman claim.

On October 10, 2012, Mcare filed a joinder petition for review/complaint naming TeamHealth, Alliant, Western Litigation, Inc. (Western), as Alliant's third party administrator, and Lexington as additional respondents. The joinder petition for review/complaint alleges that on July 24, 2009, Mcare received Alliant's Form 216 on behalf of a number of health care providers, including Doctor, as well as payment of the Mcare assessment. The form reported that Doctor had primary insurance coverage from June 1, 2009 through June 1, 2010, with a retroactive date of December 1, 2008. However, the assessment remitted on behalf of Doctor covered only the period of June 1, 2009 through June

4

1, 2010; there was no proof of primary insurance coverage with Lexington for Doctor prior to that period.

Mcare sent Alliant a list of requests for clarification, which included Alliant's report of coverage for Doctor for the period of June 1, 2009 through June 1, 2010. In response, Alliant changed Doctor's retroactive date to June 1, 2009, for the period of June 1, 2009 through June 1, 2010.

On August 2, 2010, Mcare received notice of the Hallman complaint and the request for excess coverage on Doctor's behalf. However, there was no Mcare excess coverage for Doctor in effect on January 27, 2009, the date of the alleged malpractice. Rather, the assessment for Doctor's primary coverage for the period of December 1, 2008 to June 1, 2009 was not remitted to Mcare until after the Hallman claim had been reported. The joinder petition for review/complaint seeks judgment in favor of Mcare against additional respondents for all or part of the sums for which Mcare may be liable to Doctor, as well as attorneys' fees, costs, and any other relief that the Court deems appropriate. By order dated April 14, 2014, this Court acknowledged the praecipe to discontinue the joinder petition filed against TeamHealth, Alliant, and Lexington[4] and dismissed as moot their pending motions.

On June 11, 2019, Doctor filed an Application for Summary Relief. On June 25, 2019, Mcare filed a Cross-Application for Summary Relief, and the cross-applications were submitted to this panel for disposition.[5]

---

[4] The praecipe acknowledged that Western was already dismissed from the matter via a prior agreement of counsel.

[5] Pa. R.A.P. 1532(b) provides: "At any time after the filing of a petition for review in an appellate or original jurisdiction matter[,] the court may on application enter judgment if the right of the applicant thereto is clear." "The standard for granting summary relief turns upon **(Footnote continued on next page…)**

Doctor alleges that he is entitled to summary relief because to qualify for Mcare coverage, a doctor must pay the required assessment and have the "basic insurance coverage" required by the Mcare Act. *See* Sections 711(a) and 712(d) of the Mcare Act, 40 P.S. §§1303.711(a), 1303.712(d); Section 242.17(b) and (c) of the Department's regulations, 31 Pa. Code §242.17(b) & (c) (providing that a doctor who does not pay the assessment or procure basic coverage will not be covered by the Mcare Fund). The basic insurance coverage required by the Mcare Act is a first-dollar insurance policy or self-insurance coverage of $500,000.00. Sections 702 and 711(d) of the Mcare Act, 40 P.S. §§1303.702, 1303.711(d); Section 242.2 of the Department's regulations, 31 Pa. Code §242.2. The basic insurance coverage can be obtained through a policy written on either an occurrence or a "claims-made" basis. *See* Section 742 of the Mcare Act, 40 P.S. §1303.742; Sections 242.2 and 242.7(d) of the Department's regulations, 31 Pa. Code §§242.2, 242.7(d) (requiring a provider who elects to purchase prior acts coverage or its substantial equivalent rather than a reporting endorsement to report that coverage to the Mcare Fund along with any required assessment). An occurrence policy provides coverage for liability that arises while the policy is in

---

**(continued…)**

whether the applicant's right to relief is clear. Summary relief on a petition for review is similar to the relief provided by a grant of summary judgment. Pa. R.A.P. 1532, Official Note." *Scarnati v. Wolf*, 173 A.3d 1110, 1118 (Pa. 2017) (footnote omitted). "Summary judgment is appropriate where, after the close of pleadings, 'there is no genuine issue of any material fact as to a necessary element of the cause of action or defense which could be established by additional discovery or expert report.'" *Id.* (quoting Pa. R.C.P. No. 1035.2(a)). However, "[w]here there are material issues of fact in dispute or if it is not clear that the applicant is entitled to judgment as a matter of law, the application will be denied." *Sherman v. Kaiser*, 664 A.2d 221, 225 (Pa. Cmwlth. 1995). There are no material issues of fact in dispute herein because the parties have stipulated to the relevant material facts.

6

effect. *See, e.g.*, *Pennsylvania Manufacturers' Association Insurance Co. v. Johnson Matthey, Inc.*, 160 A.3d 285, 290 (Pa. Cmwlth. 2017) ("An 'occurrence' policy provides insurance coverage for liabilities arising while the policy is in effect, whereas a 'claims made' policy protects the insured with respect to claims made against it during the policy period, regardless of when the liability arose.") (citation omitted).

Doctor notes that, in contrast, a "claims-made" policy "protects the insured with respect to claims made against it during the policy period, regardless of when the liability arose." *Id. See also* Section 742 of the Mcare Act, 40 P.S. §1303.742 (defining a "claims-made policy to include a "[m]edical professional liability insurance [policy] that insures those claims made or reported during a period which is insured"); *Fletcher v. Pennsylvania Property & Casualty Insurance Guaranty Association*, 985 A.2d 678, 680 n.4 (Pa. 2009) ("A claims made policy provides coverage for claims filed while the doctor holds the policy, in contrast to an occurrence policy, which covers claims relating to any acts that occurred while the doctor held the policy, regardless of when the claims were filed.").

The required coverage can be satisfied by having a claims-made policy in place at the time of the underlying occurrence and securing an extended reporting endorsement, i.e., "tail" coverage, or having it in place at the time of the claim that includes retroactive or "prior acts" coverage. *See* Section 742 of the Mcare Act, 40 P.S. §1303.742; Sections 242.2 and 242.7(d) of the Department's regulations, 31 Pa. Code §§242.2, 242.7(d). The Mcare Act only requires that basic coverage be in place and the assessment paid, whether coverage is through a tail policy or a prior acts policy, prior to the filing of the claim that triggers the

7

basic insurance coverage. The Mcare Act provides that there is no Mcare Fund coverage where the assessment has not been paid at the time of the claim. *See* Section 242.71(b) and (c) of the Department's regulations, 31 Pa. Code §242.71(b) & (c); *Dellenbaugh v. Commonwealth Medical Professional Liability Catastrophe Loss Fund*, 756 A.2d 1172, 1174-75 (Pa. 2000) (explaining that the doctor's failure to pay the surcharge within the statutory time limit precluded coverage by the CAT Fund).

Doctor contends that in this case, the parties agree that the Lexington policy, retroactive to December 1, 2008, was reported to Mcare on July 9, 2009, before the Hallman lawsuit was filed against Doctor on February 1, 2010. Mcare cannot claim that it did not receive an assessment for the coverage provided under that policy, including the retroactive coverage period, because the Mcare Fund has not charged an assessment for retroactive coverage for policies with a retroactive date on or after January 1, 1997. *See Fletcher v. Pennsylvania Property & Casualty Insurance Guaranty Association*, 27 A.3d 299, 306 n.11 (Pa. Cmwlth. 2011) ("Section 702 of the [A]ct provides that the basis for the surcharge is the '[p]revailing primary premium' which is the 'schedule of occurrence rates approved by the Insurance Commissioner for the Joint Underwriting Association.' 40 P.S. §1303.702. As such, the surcharge is the same regardless of whether a claims-made policy or an occurrence policy is purchased."). Mcare stopped charging an assessment for retroactive coverage when it stopped basing the assessment on the primary carrier's premium. As a result, in this case, the Mcare Fund received the required assessment in connection with the only policy that could have covered the Hallman lawsuit. *See Fletcher*, 27 A.3d at 308 (granting partial summary judgment where the doctors in the underlying malpractice action

8

received automatic tail coverage when their claims-made policies lapsed and were current on their Mcare assessments for the years in which their claims-made policies were in effect). Doctor's basic coverage policy in place to cover the Hallman lawsuit was timely reported to Mcare, which was all that was required of him to receive coverage from the Mcare Fund.

However, Mcare asserts that it is entitled to summary relief because to participate in the Mcare Fund, a doctor must pay an assessment. Section 712(d) of the Mcare Act, 40 P.S. §1303.712(d); *Dellenbaugh*. *See also Gingerlowski v. Medical Care Availability & Reduction of Error Fund*, 961 A.2d 237, 245 (Pa. Cmwlth. 2008) ("In addition to not purchasing tail coverage, Provider did not pay a Fund surcharge since 1989. Here, Petitioners did not file their malpractice claim against Provider until 1994. 'A health care provider failing to pay the surcharge . . . within the time limits prescribed will not be covered by the Fund in the event of a loss.' 31 Pa. Code §242.17(b)."). A doctor who fails to timely pay the assessments may not participate in coverage by the Mcare Fund. Section 242.17(b) of the Department's regulations. 31 Pa. Code §242.17(b); *Dellenbaugh*, 756 A.2d at 1174-75. Thus, a doctor is not eligible for coverage by the Mcare Fund if his assessment is untimely and received after the claim is made. *Lloyd v. Medical Professional Liability Catastrophe Loss Fund*, 821 A.2d 1230, 1236 (Pa. 2003).[6]

_____

[6] As the Pennsylvania Supreme Court explained:

> To require the CAT Fund to cover a health care provider who fails to pay a required surcharge on time would have the effect of making the surcharge payment an option. It would be absurd to allow health care providers to forego their surcharge payments until a possible claim arises. The only way the CAT Fund is able

**(Footnote continued on next page…)**

9

In this case, Mcare received Doctor's assessment more than 60 days after the effective date of the policy period commencing December 1, 2008, and after notice of the Hallman lawsuit in violation of Sections 242.6(a)(3) and 242.17(b) of the Department's regulations, 31 Pa. Code §§242.6(a)(3)[7] and 242.17(b).  TeamHealth/Alliant was required to report Doctor's insurance coverage and to pay the appropriate assessment within 60 days of the start of his employment and the policy on December 1, 2008, or by January 30, 2009.  Section 242.6(a)(3) of the Department's regulations, 31 Pa. Code §242.6(a)(3).  Team Health/Alliant did not report Doctor's coverage and pay the assessment until

---

**(continued…)**

> to operate is by collecting annual surcharge payments from all health care providers.  Lloyd has failed to provide this Court with controlling authority requiring the CAT Fund to demonstrate prejudice prior to denying coverage for failure to make a timely surcharge payment.  Even if we were to find the existence of such a requirement, the CAT Fund would clearly suffer prejudice if it were required to cover health care providers who remit their surcharge payments only after a possible claim arises.  *See generally Dellenbaugh*.

*Lloyd*, 821 A.2d at 1236.

[7] Section 242.6(a)(3) of the Department's regulations states:

> (3) *Form 216—Remittance Advice*.  This form is to be used by basic professional liability insurance carriers . . . for summarizing surcharges collected, payable and refundable.  The form, accompanied by a check, should be received in the Director's Office within 60 days from the effective date of the policy.  On installment policies, the surcharge applicable to the full annual policy period shall be collected and remitted to the Director at the inception of the policy.

31 Pa. Code §242.6(a)(3).

August 11, 2010, after it had submitted its C-416 forms on July 7, 2010, and July 26, 2010, for excess coverage for the purported January 27, 2009 professional malpractice.[8] The assessment payment was 550 days too late. While TeamHealth had a retroactive date of December 1, 2008, for Doctor under the Lexington policy, it did not have that retroactive date on the Mcare layer of coverage due to its failure to report the December 1, 2008, to June 1, 2009 coverage and pay the required assessment until after the Hallman lawsuit was filed.

Moreover, Mcare contends, Doctor's reliance on tail and prior acts coverage is misplaced. Tail coverage extends the reporting period for claims that are made after the policy ends, but only for acts occurring during the policy period. Prior acts coverage is for claims for events that happened prior to the purchase of insurance because it uses the retroactive date of a prior policy. Doctor was added to the Lexington claims-made policy when he started on December 1, 2008. The alleged malpractice took place on January 27, 2009, after the Lexington policy was in effect. Thus, any discussion of how the Mcare Fund treats retroactive coverage, or whether tail or prior acts coverage for the purpose of assessments is inapposite and irrelevant to this coverage action, and Doctor's reliance on *Fletcher* is misplaced and inaccurate. The Mcare Fund charges for coverage back to the retroactive date under a claims-made policy and TeamHealth/Alliant's August 11, 2010 assessment payment for the period retroactive from December 1, 2008, to June 1, 2009, belies Doctor's arguments in this regard.

---

[8] Section 242.6(a)(4) of the Department's regulations states, "*Form C[-]416—Insurance Company Report*. This completed form shall be submitted by the insurer . . . to the Director, as notice to the Fund of claims reasonably believed to exceed the coverage of the insurer or the retained limits of the self-insured."

11

We agree with Mcare's determination of the coverage of the Mcare Fund applicable to the instant matter. Regardless of the period covered by the Lexington policy, the assessment for Doctor's primary coverage for the period of December 1, 2008, to June 1, 2009, was not remitted to Mcare until after the Hallman lawsuit had been filed and reported. Mcare Fund's denial of coverage was appropriate. *Lloyd*; *Dellenbaugh*. Further, as Mcare points out, Doctor will not have to pay any funds for the $500,000.00 in excess coverage that TeamHealth paid out in the settlement based on its policy. Doctor is merely the subrogor in this action and any Mcare Fund monies would go to a recoupment by TeamHealth.

Accordingly, Mcare's Cross-Application for Summary Relief is granted; Doctor's Application for Summary Relief is denied; and Doctor's Petition for Review is dismissed.

_____
MICHAEL H. WOJCIK, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| George P. Desjardins, Jr., M.D., | : | |
| | : | |
| Petitioner | : | |
| | : | |
| v. | : | No. 506 M.D. 2012 |
| | : | |
| Michael F. Consedine, in his | : | |
| official capacity as Insurance | : | |
| Commissioner of the | : | |
| Commonwealth of Pennsylvania, | : | |
| and the Pennsylvania Insurance | : | |
| Department Medical Care | : | |
| Availability and Reduction of Error | : | |
| Fund ("Mcare"), | : | |
| | : | |
| Respondents | : | |
| | : | |
| v. | : | |
| | : | |
| Team Health, Inc., Alliant Insurance | : | |
| Services, Inc., and Western | : | |
| Litigation, Inc., and Lexington | : | |
| Insurance Company, | : | |
| | : | |
| Additional Respondents | : | |

# **O R D E R**

AND NOW, this 6<u>th</u> day of <u>January</u>, 2020, the Cross-Application for Summary Relief of Respondents Michael F. Consedine, in his official capacity as Insurance Commissioner of the Commonwealth of Pennsylvania,[1] and the

---

[1] We note that Michael F. Consedine is no longer the Insurance Commissioner. However, Rule 503(c) of the Pennsylvania Rules of Appellate Procedure allows for the automatic substitution of his successor, Jessica K. Altman, in this matter.

Pennsylvania Insurance Department Medical Care Availability and Reduction of Error Fund is GRANTED; the Application for Summary Relief of Petitioner George P. Desjardins, Jr., M.D. is DENIED; and the Petition for Review is DISMISSED.


                                           _____

                                           MICHAEL H. WOJCIK, Judge