IN THE COMMONWEALTH COURT OF PENNSYLVANIA

L.S.,                                    :
                    Petitioner           :
                                         :
          v.                             :    No. 391 M.D. 2019
                                         :    Submitted: August 14, 2020
Pennsylvania State Police,               :
                    Respondent           :

BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
           HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE CHRISTINE FIZZANO CANNON, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY PRESIDENT JUDGE LEAVITT                    FILED: December 3, 2020

        L.S., *pro se*, has filed a petition for review to challenge the
constitutionality of subchapter I of the Sexual Offender Registration and Notification
Act (SORNA II), 42 Pa. C.S. §§9799.10-9799.75. L.S. requests a declaratory
judgment that SORNA II cannot constitutionally be applied to him and an injunction
to stop the Pennsylvania State Police (State Police) from requiring him to register as
a sex offender. Asserting there are no material facts in dispute, L.S. has filed a
motion for summary relief[1] in his favor.

        We begin with a review of Pennsylvania's sex offender registration
laws. Beginning in 1995, the General Assembly enacted a series of statutes requiring
convicted sex offenders living within the Commonwealth to register with the State

---

[1] L.S. titled his motion a "Motion for Summary Judgment." Consistent with Chapter 15 of the
Pennsylvania Rules of Appellate Procedure, the Court shall treat the motion as a motion for
summary relief under PA. R.A.P. 1532(b). *Pennsylvania Manufacturers' Insurance Association
Company v. Johnson Mathey, Inc.*, 160 A.3d 285, 287 n.1 (Pa. Cmwlth. 2017). "The standards
that we apply to a motion for summary relief are, as is discussed below, the same as for a motion
for summary judgment." *Id*.

Police for varying periods of time. The first of these statutes was commonly known as Megan's Law, *former* 42 Pa. C.S. §§9791-9799.6, which became effective on April 22, 1996. In 2000, the General Assembly enacted what is commonly referred to as Megan's Law II, *former* 42 Pa. C.S. §§9791-9799.7. In 2004, Megan's Law II was succeeded by Megan's Law III, *former* 42 Pa. C.S. §§9791-9799.75, which remained in effect until 2012. The Sexual Offender Registration and Notification Act (SORNA I), 42 Pa. C.S. §§9799.10-9799.41, replaced Megan's Law III.[2]

SORNA I was enacted, *inter alia*, to "protect the safety and general welfare of the citizens of this Commonwealth by providing for increased regulation of sexual offenders, specifically as that regulation relates to registration of sexual offenders and community notification about sexual offenders." *Taylor v. Pennsylvania State Police*, 132 A.3d 590, 595 (Pa. Cmwlth. 2016) (quoting *former* 42 Pa. C.S. §9799.11). SORNA I established, for the first time, a three-tier classification system for sexual offenders. The sexual "offender's tier status [wa]s determined by the offense committed and impact[ed] the length of time an offender [wa]s required to register and the severity of punishment should an offender fail to register or provide false registration information." *Taylor*, 132 A.3d at 595 (citing *former* 42 Pa. C.S. §9799.15).

SORNA I increased the length of registration for many offenders; required quarterly in-person reporting; and placed personal information about the registrant, such as his home address and place of employment, on the internet. In

---

[2] In 2013, the Pennsylvania Supreme Court struck down Megan's Law III for violating the single subject rule of Article III, Section 3 of the Pennsylvania Constitution, PA. CONST. art. III, §3. *Commonwealth v. Neiman*, 84 A.3d 603, 616 (Pa. 2013). By the time Megan's Law III was struck down, it had been replaced by SORNA I.

*Commonwealth v. Muniz*, 164 A.3d 1189 (Pa. 2017),[3] our Supreme Court held SORNA I to be unconstitutional because these provisions violated the prohibition against *ex post facto* laws.[4]

Following the Supreme Court's decision in *Muniz*, the General Assembly enacted SORNA II, which has two subchapters. As our Supreme Court has explained,

> Subchapter H is based on the original SORNA [I] statute and is applicable to offenders … who committed their offenses after the December 20, 2012[,] effective date of SORNA [I]; Subchapter I is applicable to offenders who committed their offenses prior to the effective date of SORNA [I] and to whom the *Muniz* decision directly applied.[5]

---

[3] In *Muniz*, the petitioner had been convicted of two counts of indecent assault against a minor less than 13 years of age. At the time of his conviction, Megan's Law III required registration with the State Police for 10 years following the petitioner's release from incarceration. *Muniz*, 164 A.3d at 1193 (citing *former* 42 Pa. C.S. §9795.1). However, the petitioner absconded before sentencing. By the time he was apprehended and sentenced, SORNA I was in effect. Under SORNA I's new classification system, the petitioner was subject to lifetime registration. The petitioner challenged SORNA I as unconstitutional because it retroactively increased the length of his registration and notification requirements. The Pennsylvania Supreme Court held that the retroactive application of SORNA I's new tier system was an unconstitutional *ex post facto* law, to the extent that it imposed a lifetime registration requirement that was not applicable when the petitioner committed his crimes.

[4] The United States Constitution provides, in pertinent part, that "[n]o … ex post facto Law shall be passed." U.S. CONST. art. I, §9. The Pennsylvania Constitution likewise provides, in pertinent part, "[n]o *ex post facto* law … shall be passed." PA. CONST. art. I, §17. "[T]he *ex post facto* clauses of both constitutions are virtually identical, and the standards applied to determine an *ex post facto* violation are comparable." *Evans v. Pennsylvania Board of Probation and Parole*, 820 A.2d 904, 909 (Pa. Cmwlth. 2003) (citing *Commonwealth v. Young*, 637 A.2d 1313, 1317 n.7 (Pa. 1993)).

[5] Subchapter I applies to individuals who are:

> (1) *convicted of a sexually violent offense* committed on or after April 22, 1996, but before December 20, 2012, whose period of registration with the Pennsylvania State Police, as described in section 9799.55 (relating to registration), has not expired; or

*Commonwealth v. Butler*, 226 A.3d 972, 981 n.11 (Pa. 2020). Subchapter I requires offenders, upon their release from incarceration, to provide the State Police with information about their current or intended residences, employment, and enrollment as a student. 42 Pa. C.S. §9799.56(a)(1). In addition, offenders must notify the State Police "within three business days of" any changes in residence, employment or employment location, or enrollment status in an educational institution. 42 Pa. C.S. §9799.56(a)(2). Offenders must "appear within 10 days before each annual anniversary date of [their] initial registration ... at an approved registration site to complete a verification form and to be photographed." 42 Pa. C.S. §9799.60(b). Offenders who fail to comply with the registration and verification provisions "may be subject to prosecution under [Section 4915.2 of the Crimes Code,] 18 Pa. C.S. §4915.2 (relating to failure to comply with 42 Pa. C.S. Ch. 97 Subch. I registration requirements)." 42 Pa. C.S. §§9799.56(d), 9799.60(e).

L.S.'s petition for declaratory and injunctive relief asserts that subchapter I of SORNA II cannot be applied to him because to do so would violate the constitutional proscription against *ex post facto* laws. The petition states that on December 19, 1994, L.S. was arrested on charges of rape, aggravated assault, and aggravated indecent assault. Petition at 2, ¶1. On December 27, 1995, he was sentenced to an aggregate term of 42 to 84 months of incarceration.[6] At the time of his offense, Pennsylvania did not have a law requiring convicted sex offenders to

---

> (2) *required to register* with the Pennsylvania State Police *under a former sexual offender registration law* of this Commonwealth on or after April 22, 1996, but before December 20, 2012, whose period of registration has not expired.

42 Pa. C.S. §9799.52 (emphasis added).

[6] In the petition, L.S. averred that he was convicted on November 13, 1995. Petition at 2, ¶2. In the amended motion for summary relief, L.S. stated that he was sentenced on December 27, 1995. Amended Motion at 1, ¶3. Therefore, for purposes of this opinion, we will use December 27, 1995, as his date of sentencing.

4

register with the State Police. *Id.*, ¶¶4-5. The petition further states that, on May 8, 2004, L.S. was informed that he was required to register with the State Police as a sex offender for his lifetime. *Id.*, ¶3.[7] The answer of the State Police does not contest these allegations.

L.S. filed a motion for summary relief.[8] Subchapter I of SORNA II will require L.S. to register for his lifetime. 42 Pa. C.S. §9799.55(b)(2). Accordingly, he will be required to report his residence and place of employment, including any changes thereto, to the State Police. 42 Pa. C.S. §9799.56(a)(1)-(2). This information, together with a current photograph, will appear online. L.S. must appear annually before the State Police to verify his residence and to be photographed. 42 Pa. C.S. §9799.60(b). L.S. asserts that these registration requirements are punitive and violate the *ex post facto* clauses of the United States and Pennsylvania Constitutions.

The State Police responds that "Megan's Law I was in place when [L.S.] was convicted on December 27, 1995[,] and required his registration for ten years." State Police Amended Brief at 7-8. Megan's Law II required L.S. to register for his lifetime because he was "incarcerated … on or after the effective date of this

---

[7] At that time, Megan's Law II was in effect, and it imposed a lifetime registration requirement upon L.S.

[8] Summary relief, akin to a motion for summary judgment, is properly granted where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Pennsylvania Medical Society v. Foster*, 624 A.2d 274, 276 (Pa. Cmwlth. 1993). Because there are no material facts in dispute, we examine whether L.S.'s right to judgment is clear as a matter of law.

Initially, in his motion for summary relief, L.S. contended that, pursuant to the Pennsylvania Supreme Court's decision in *Muniz*, the application of SORNA I's registration requirements to him violates the *ex post facto* clause. Subsequently, L.S. filed an amended motion for summary relief to address the applicability of the registration requirements in SORNA II.

act." *Id.* at 8. The State Police argues that L.S. was a lifetime registrant in Pennsylvania when SORNA II was enacted; therefore, it did not extend his period of registration. As such, the State Police contends that L.S.'s application must fail.

We conclude that L.S. is entitled to relief under this Court's *en banc* decision in *T.S. v. Pennsylvania State Police*, 231 A.3d 103 (Pa. Cmwlth. 2020), *notice of appeal filed* (Pa., No. 34 MAP 2020, filed June 10, 2020). In *T.S.*, this Court held that subchapter I of SORNA II was punitive and could not be applied to the petitioner, because he committed his sexual offenses before Pennsylvania had enacted its first sex offender registration scheme. *T.S.* is binding here because L.S. committed his offense in 1994, before there was a sexual offender registration law. We reject the contention of the State Police that because his conviction took place after the enactment of Megan's Law I, it applies to L.S.

The petitioner in *T.S.* committed his sexual offense in 1990, before the 1995 enactment of Megan's Law I. Upon his release from incarceration in 2002, T.S. was subject to a lifetime registration requirement in Megan's Law II. Subchapter I of SORNA II continued that registration requirement. Before this Court, T.S. argued subchapter I of SORNA II violated the prohibition against *ex post facto* laws, given the Supreme Court's holding in *Muniz*, 164 A.3d 1189. We agreed.

In reaching this conclusion, this Court applied the analysis set forth by the United States Supreme Court in *Kennedy v. Mendoza-Martinez*, 372 U.S. 144 (1963), to determine whether subchapter I was punitive in effect.[9] *T.S.*, 231 A.3d at 119. Accordingly, this Court considered the following seven factors:

> [1] whether the sanction involves an affirmative disability or restraint, [2] whether it has historically been regarded as

---

[9] The General Assembly stated in SORNA II that the purpose of the new registration statute was not to impose punishment. The legislature's stated intention is not dispositive.

6

punishment, [3] whether it comes into play only on a finding of scienter, [4] whether its operation will promote the traditional aims of punishment – retribution and deterrence, [5] whether the behavior to which it applies is already a crime, [6] whether an alternative purpose to which it may rationally be connected is assignable for it, and [7] whether it appears excessive in relation to the alternative purpose assigned.

*Id.* (quoting *Mendoza-Martinez*, 372 U.S. at 168-69). This Court concluded that the majority of the factors weighed in favor of finding subchapter I of SORNA II to be punitive as to T.S., particularly with regard to the annual in-person appearances at approved registration sites,[10] updates with the State Police of any changes in registration information,[11] and publication online of a registrant's personal information.[12] Thus, we held as follows:

> While some form of retroactive registration requirements may be constitutional, *see Smith[ v. Doe]*, 538 U.S. [84,] 105 [(2003)], applying the analysis in *Muniz*, we must find the cumulative effect of the registration requirements of subchapter I of [SORNA II] on [the p]etitioner goes beyond imposing mere registration and is punishment. [The p]etitioner, who committed the crimes giving rise to his present obligation to register in 1990, could not "have fair warning" of the applicable law that now mandates his registration and the terms thereof…. His right to relief on these *ex post facto* claims is not premised in a "right to less punishment, but the lack of fair notice and governmental restraint" that occurred when the General Assembly "increase[d] punishment beyond what was prescribed when the crime was consummated." … Accordingly, we determine that the *Mendoza-Martinez* factors weigh in favor of finding subchapter I of [SORNA II] to be punitive as applied to [the p]etitioner under the *Ex Post Facto* clause of the United States Constitution.

---

[10] 42 Pa. C.S. §9799.60(b).

[11] 42 Pa. C.S. §9799.56(a)(2).

[12] 42 Pa. C.S. §9799.63(c)(1).

7

*T.S.*, 231 A.3d at 136-37 (quotations omitted) (footnotes omitted).

Likewise, in *B.W. v. Pennsylvania State Police* (Pa. Cmwlth., No. 433 M.D. 2018, filed July 6, 2020) (unreported),[13] the petitioner challenged the constitutionality of subchapter I of SORNA II, as applied to him. The petitioner was convicted in 1995 of rape, aggravated indecent assault, and indecent assault and sentenced to 3½ to 10 years' imprisonment. Because the petitioner committed his crimes prior to the enactment of a sexual offender registration scheme, he did not have fair warning of the extensive reporting requirements that would be imposed on him. Although the petitioner was convicted of his crimes in December 1995, after Megan's Law I was enacted, we concluded that "the *date of the offense* is central to an *ex post facto* analysis." *B.W.*, slip op. at 14 (quoting *T.S.*, 231 A.3d at 119) (emphasis added). Accordingly, we held that subchapter I of SORNA II was an unconstitutional *ex post facto* law as applied to him. *B.W.*, slip op. at 14.

Recently, the Supreme Court issued a decision in the consolidated appeals of *Commonwealth v. Lacombe* and *Commonwealth v. Witmayer*, 234 A.3d 602 (Pa. 2020) (collectively, *Lacombe*). It held that subchapter I of SORNA II did not violate the constitutional prohibition against *ex post facto* laws, at least with regard to the appellees in that case, who committed their offenses after Pennsylvania had enacted a sexual offender registration statute. Indeed, the Supreme Court stated that its *ex post facto* analysis of subchapter I applied "to those *convicted* of a sexually violent offense *after* April 22, 1996, but before December 20, 2012." *Lacombe*, 234 A.3d at 615 (emphasis added). The holding in *Lacombe* is limited to its facts. It

---

[13] An unreported panel decision of this Court, "issued after January 15, 2008," may be cited "for its persuasive value[.]" Section 414(a) of the Commonwealth Court's Internal Operating Procedures, 210 Pa. Code §69.414(a). The State Police filed an appeal in *B.W.* on July 29, 2020, which is docketed at 44 MAP 2020. *B.W.*'s cross-appeal, filed on August 13, 2020, is docketed at 47 MAP 2020.

does not undertake an *ex post facto* analysis of subchapter I as applied to individuals who committed their offenses *before* Pennsylvania's first sexual offender registration scheme became effective on April 22, 1996.

The holdings in *T.S.* and *B.W.* are dispositive here. As in those cases, L.S. committed his offense before Pennsylvania had a statutory sex offender registration system. The lifetime registration requirement imposed on L.S. under subchapter I of SORNA II derives solely from his conviction for a crime that was committed in 1994. At the time he committed this crime, L.S. did not "'have fair warning' of the applicable law that now mandates his registration and the terms thereof." *T.S.*, 231 A.3d at 118 (quoting *Peugh v. United States*, 569 U.S. 530, 544 (2013)). As in *T.S.* and *B.W.*, the application of SORNA II's lifetime registration and reporting requirements imposes greater punishment on L.S. than did the law in effect at the time that he committed his crimes. Thus, subchapter I of SORNA II is an unconstitutional *ex post facto* law as applied to L.S.

Accordingly, we grant L.S.'s amended motion for summary relief and declare that L.S. is not subject to subchapter I of SORNA II's registration and reporting requirements, which will result in his removal from the sexual offender registry.

_____
MARY HANNAH LEAVITT, President Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

L.S.,                              :
                    Petitioner     :
                                   :
        v.                         :    No. 391 M.D. 2019
                                   :
Pennsylvania State Police,         :
                    Respondent     :

# **O R D E R**

AND NOW, this 3rd day of December, 2020, L.S.'s Amended Motion for Summary Relief is GRANTED.  Judgment is entered in favor of L.S., declaring the application of subchapter I of the Act of February 21, 2018, P.L. 27, 42 Pa. C.S. §§9799.10-9799.75, *as amended* by the Act of June 12, 2018, P.L. 140 (collectively, SORNA II) to L.S. is a violation of the *ex post facto* clauses of the United States and Pennsylvania Constitutions.  Therefore, the Pennsylvania State Police is ORDERED not to apply subchapter I of SORNA II to L.S., which will result in his removal from the sexual offender registry.

_____
MARY HANNAH LEAVITT, President Judge